# WRIGHT, Assignee *v.* KENTUCKY & GREAT EASTERN RAILWAY COMPANY & Another.

# FARMERS' LOAN & TRUST COMPANY *v.* WRIGHT, Assignee & Others.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KENTUCKY.

Argued January 15, 18, 19, 1886.—Decided March 1, 1886.

The Kentucky and Great Eastern Railway Construction Company, which had a contract with the Kentucky and Great Eastern Railway Company, made May 22, 1873, to construct for it a railway in Kentucky, from Newport to Catlettsburg, and did work between Maysville and Catlettsburg, completing about seven miles of road, and purchasing and putting down the iron rails and other materials, acquired no lien on the road or on any part of its line, completed or not completed.

The Kentucky and Great Eastern Railway Company having previously, under a contract made by it January 15, 1873, with the owners of the Maysville and Big Sandy railroad, for a conditional sale of that railroad, taken possession of it, and the Construction Company having notice of that contract, when the construction contract was made, and the vendors having declared that contract to be void, according to its terms, and resumed possession of the railroad, with the consent of the vendee, the Construction Company acquired no rights in regard to so much of the line, completed or not completed, between Maysville and Catlettsburg, as was part of the line of the Maysville and Big Sandy railroad, which were not subject to the rights of the vendors of that road.

A mortgage having been made by the Kentucky and Great Eastern Railway Company on February 15, 1872, to a trustee, to secure bonds, on the line from Newport to Catlettsburg, the trustee acquired under it no greater rights at any time than the Railway Company had, and, no bonds having been issued before the conditional sale of the Maysville and Big Sandy railroad was made, on January 15, 1873, the trustee had, as against the vendors of that road, only such rights as the mortgagor had.

The facts which make the case are stated in the opinion of the court.

*Mr. C. L. Raison, Jr.*, for the assignee.

*Mr. John A. Campbell* for Farmers' Loan & Trust Company.

*Mr. Aaron F. Perry* for the railroad companies.

Mr. Justice Blatchford delivered the opinion of the court.

On the 18th of December, 1850, the Legislature of Kentucky, by special act, Laws of 1850, vol. ii., ch. 96, p. 73, created a corporation known as the Maysville and Big Sandy Railroad Company (hereinafter called the Big Sandy Company), with power to construct and maintain a railroad, commencing at or near the city of Maysville, Kentucky, and running thence to the Big Sandy River, by such route as might be found practicable. The act gave authority to the counties of Mason, Lewis and Greenup, and to any town in any of those counties, to subscribe to the stock of the company, when authorized by a majority of the voters of the county or town, the proposition to be submitted to them by the directors of the company; and the issue of bonds by the counties and towns in aid of the railroad was provided for. This indicated that the route of the road was expected to run through the counties above named. Maysville is in Mason County, on the south bank of the Ohio River. Lewis County adjoins Mason on the east, and Greenup adjoins Lewis on the east. All three of them lie along the south bank of the Ohio River. The next county in Kentucky east of Greenup is Boyd, and the Big Sandy River, after being for some distance the boundary between Kentucky and West Virginia, empties into the Ohio River in Boyd County, only a short distance eastward of the line between Greenup and Boyd Counties. For the railroad to reach the Big Sandy River it was necessary it should pass for a short distance through Boyd County.

The company was organized and began the construction of the road in 1853, and, after expending a considerable sum of money, claimed to have been $300,000, it became financially embarrassed and suspended the work permanently in 1854. To secure certain of its creditors, it executed one or more mortgages to them on its road and all its franchises and chartered privileges.

By an act of the Legislature of Kentucky, approved February 17, 1866, Laws of 1866, ch. 755, p. 664, those mortgages

were declared to be legal, and authority was given to foreclose them by proceedings in the Mason Circuit Court, with power to that court to sell the road, with all its property, rights of property, franchises, and chartered privileges, at public sale; and the act provided, that the purchasers at the sale, after it had been approved by the court, should be invested with the title to the road, and all its franchises and chartered privileges, and should have power to reorganize the company under its charter, and, for the purposes of its charter, to "make contracts with individuals, corporations and other railroad companies for the building, completion and operation of said road, or any part thereof." The foreclosure proceedings were had in 1869, resulting in a decree and a sale thereunder, at which M. Ryan, H. Taylor, Elizabeth Gray, W. H. Wadsworth, John B. Poyntz, and John G. Hickman, trustee of Charles B. Coons, deceased, became the purchasers of what the act of 1866 authorized to be sold, and a deed of it was made to them, but was not recorded until 1875.

On the 21st of March, 1870, the Legislature of Kentucky, by a special act, Laws of 1870, vol. 2, ch. 867, p. 545, created a corporation known as the Kentucky and Great Eastern Railway Company (hereinafter called the Great Eastern Company). The 10th section of that act gave power to the company to construct a railway from such point or points in the cities of Covington and Newport as it might select, thence through the Counties of Campbell, Kenton, Pendleton, Bracken, Harrison, Fleming, Nicholas, Robertson, Bourbon, Clark, Montgomery, Menifee, Bath, Rowan, Powell, Wolfe, Morgan, Carter, Lawrence, Johnson, Magoffin, Breathitt, Floyd, Pike and Letcher, or such of them as it might choose, to any point or points on the boundary line between the States of Kentucky and Virginia that it might select. The route thus indicated for the road, by naming those counties, carried it far to the southward of the south line of Boyd County and of any road running from Maysville through Mason, Lewis, Greenup and Boyd Counties to the Big Sandy River. The 10th section of the act also authorized the company "to construct such branch railroads to their main trunk road, in or through such counties,"

as it might deem proper.    Provision was made, in section 16
and following sections, for subscriptions by counties, precincts,
cities and towns to the stock of the company, and for the issu-
ing of bonds to pay therefor.    Section 41 provided as follows:
"That the president and directors of said company may, with
the assent of the holders of a majority in value of the stock in
said company, purchase and hold any other railroad in this or
any other State, and may subscribe stock in, or aid in the
building of, any other road, in or out of this State, whenever,
in their judgment, it may be to the interest of the said railway
company to do so.    They may sell the said railway; or lease
the same, and may build branches from said road, and branches
from said branches.    That said company may connect its said
road, or any of its branches, with the railroad of any other
company, in or out of this State, and may lease and operate
any railroad connecting with the road or branches of said rail-
way; and it may consolidate with, and make running and oper-
ating arrangements with, any other railroad company, upon
such terms as may be agreed on by the contracting parties."
By sections 44 and 45, it was provided that the company might
issue its bonds for $1000 each, to an amount not exceeding
$15,000,000, to be secured by "a mortgage or deed of trust
conveying said railroad and its property franchises to a trustee
or trustees."

The Great Eastern Company was organized in June, 1871.
On the 15th of July, 1871, the owners of the Big Sandy road
made the following written proposition, signed by all of them,
to the Great Eastern Company: "To the Kentucky and Great
Eastern Railroad Co.: The owners of the Maysville and Big
Sandy Railroad propose to accept fifty-seven thousand and
seven dollars for the road and all its rights and franchises held
by them under their purchase, payable in cash or bonds of the
county of Mason, or other good security.    Should the pay-
ments be made in the bonds of the county of Mason, they will
take the payments in such proportion as their debt bears to the
sum voted by the county of Mason and the issuance of those
bonds by the county to the Kentucky and Great Eastern Com-
pany.    But it is hereby stipulated, that, upon the acceptance

of this proposition by the Kentucky and Great Eastern road, no unnecessary delay shall occur in taking the vote of the county of Mason upon their subscription to the railroad company. This proposition to remain open for acceptance for thirty days from 15th day of July, 1871; the work on the road to commence in good faith in six months from the 15th July, or this article to be void."

It is manifest, that, in this proposition, the owners of the Big Sandy property were providing for the completion of the Big Sandy road, under the charter of the Big Sandy Company and the act of 1866; for, the only authority for the issuing of bonds of the county of Mason was that given by the charter of the Big Sandy Company, and, by the proposition, the bonds of that county, to be taken in payment, were bonds to be issued for a subscription to stock by that county; and the work which was to commence in six months was work on the Big Sandy road.

The executive committee of the Great Eastern Company accepted this proposition and reported it to the board of directors of that company, at a meeting held by them, and it was, on the 23d of August, 1871, approved by that board. On the 24th of August, 1871, the board adopted a resolution, "that the question of submitting the proposition to the various counties between Newport and Catlettsburgh, for subscriptions to the stock of the company, be referred to the executive committee, with full powers vested in them to proceed and carry such propositions into effect." Newport is on the Ohio River, in Campbell County, and Catlettsburgh is on the Big Sandy River, in Boyd County, and the counties between Newport and Catlettsburgh are Campbell, Pendleton, Bracken, Mason, Lewis, Greenup and Boyd, all lying on the south bank of the Ohio River. Maysville is in Mason County, about half-way between the east and west lines of that county.

In the fall of 1871 Mason County voted to subscribe $400,-000, and Lewis County voted to subscribe $100,000, to the stock of the Great Eastern Company, the subscriptions to be paid in the bonds of those counties.

There is no satisfactory evidence that any work on the road

between Maysville and Catlettsburgh, or on the old line of the Big Sandy Company, was commenced within six months from the 15th of July, 1871; or that even surveying on that line was done within that time.

On the 15th of February, 1872, the Great Eastern Company executed a mortgage to the Farmers' Loan and Trust Company (hereinafter called the Trust Company), a corporation of New York, as trustee. That mortgage recites as follows: "Whereas the said Kentucky and Great Eastern Railway Company, the party of the first part, has been duly chartered and organized, under and by virtue of the laws of the Commonwealth of Kentucky, with power to locate, construct, equip and operate a line of railway within the said Commonwealth of Kentucky, from the city of Newport, in Campbell County, State of Kentucky, upon, along and near the southern bank of the Ohio River, in said State of Kentucky, to a point on the State line between the State of Kentucky and West Virginia, at or near Catlettsburgh, Boyd County, State of Kentucky, a distance of one hundred and forty-six miles, be the same more or less." It then states that the company, "for the purpose of constructing, equipping, and completing its aforesaid line of railway," has determined to issue its bonds for an amount "not exceeding $15,000 per mile for the whole length of said railway in the State of Kentucky," being in all $2,190,-000, and to secure the payment of said bonds "by a first mortgage upon the aforesaid railroad, franchises, and all the property, real and personal, rights and interests, now owned and possessed" by it in the State of Kentucky, or which it "may hereafter acquire therein." It then mortgages to the Trust Company "all and singular the entire line of the Kentucky and Great Eastern Railway Company's railroad, extending from the said city of Newport, in the State of Kentucky, to said point in said State, on the State line between the States of Kentucky and West Virginia, as hereinbefore described, as the same is now or may hereafter be located and constructed by the said party of the first part, with the right of way, and all the real and personal property, rights and interests of the said party of the first part to the said line of

railway in the State of Kentucky, whether the same is now owned or possessed or may hereafter be acquired by the said party of the first part, and all the privileges and franchises of the said party of the first part for the holding, operating, and maintaining its said line of railway." The mortgage trust was accepted by the trustee, in writing, March 5, 1872, and the mortgage was recorded in October, 1872, in Campbell, Pendleton and Bracken Counties; in November, 1872, in Lewis and Greenup Counties; and, in January, 1873, in Boyd County.

By an act of the Legislature of Kentucky, passed March 27, 1872, it was provided, sec. 1, that section 10 of the act of March 21, 1870, be amended so as to authorize the Great Eastern Company "to construct said road through the counties of Mason, Lewis, Greenup and Boyd, and the said Kentucky and Great Eastern Railway Company are hereby invested with all the rights, privileges and franchises necessary, as contained in their said charter, to construct their main stem line of railway through said counties, except as hereinafter provided." Section 2 provided that whenever the company should desire to submit any vote to the qualified voters of either of the four counties above named, "for any subscriptions to the capital stock of said railway, or any branch thereof," it should be submitted under the provisions of section 16 of the act of March 21, 1870, and not otherwise. Section 2 concluded with this proviso: "*Provided, further*, That said Kentucky and Great Eastern Railroad Company shall, previous to constructing their said road east of Maysville, through Mason County, and on through the counties of Lewis, Greenup and Boyd, purchase and pay for the Maysville and Big Sandy Railroad, or make such arrangements with the owners of said Maysville and Big Sandy Railroad as shall be satisfactory to each of said owners." Sections 5 and 6 were as follows: "§ 5. The president and directors of said railroad company shall have no authority, either under this charter or the charter of the Maysville and Big Sandy Railroad Company, to submit to voters of any county the question of a subscription by a county to the capital stock of said company; but said subscription may alone be submitted by the county court. § 6. Nothing in this act shall

be construed as making valid the votes in the counties of Lewis and Mason upon the propositions voted on in said counties to subscribe to the capital stock in said counties."

Undoubtedly because of the concluding proviso of section 2 of the act of March 27, 1872, and of the fact that any agreement growing out of the proposition of July 15, 1871, was considered to be at an end, a resolution was adopted at a meeting of the board of directors of the Great Eastern Company, on the 10th of February, 1873, authorizing the president of the company, then Nathaniel Sands, "to contract with the officers and owners of the Maysville and Big Sandy Railroad Company, for the purchase and transfer of said road to the Kentucky and Great Eastern Railway Company."

Prior to this, and on the 15th of January, 1873, all of the six owners of the Big Sandy property, except Poyntz (the Bank of Kentucky having succeeded to the interest of Ryan), had executed the following instrument:

"Whereas the General Assembly of the Commonwealth of Kentucky passed an act entitled 'An Act to authorize the sale of the Maysville and Big Sandy Railroad, and providing for the organization of a new company under its charter to construct said road,' approved February 17th, 1866; and whereas said road was duly sold by a decree of the Mason Circuit Court in pursuance to the provisions of said Act, and was purchased by M. Ryan, H. Taylor, Elizabeth Gray, W. H. Wadsworth, John B. Poyntz, and John G. Hickman, trustee of Charles B. Coons, deceased, and the sale and purchase was duly confirmed by said court; and whereas the said parties, as sole owners and corporators, having reorganized the said railroad company under their purchase and said act of the Legislature, did, on the 15th day of July, 1871, propose to sell and transfer to the Kentucky and Great Eastern Railway Company all the property, rights, and franchises of the said Maysville and Big Sandy Railroad Company held by them as the sole owners, stockholders, corporators, and officers of same, for the sum of ($57,007) fifty-seven thousand and seven dollars, payable in cash or bonds of the county of Mason, or other good security, in the way pointed out by the written proposition of that date, which was

duly accepted by said Kentucky and Great Eastern Railway Company; and whereas the said M. Ryan (and his assignee, the Bank of Kentucky), H. Taylor, Elizabeth Gray, W. H. Wadsworth, John G. Hickman, trustee of Charles B. Coons, deceased, are desirous to faithfully carry out said contract, and recognize its binding force, and for the purpose of securing the construction of the Maysville and Big Sandy road under its charter and that of the Kentucky and Great Eastern Railway Company, and with such modifications and explanations as may the better secure the interests of said proposers, and of said Maysville and Big Sandy Railroad Company, the Kentucky and Great Eastern Railway Company thereto consenting: Now it is agreed by M. Ryan and the Bank of Kentucky, his assignee, H. Taylor, Elizabeth Gray, W. H. Wadsworth, and John G. Hickman, trustee of Charles B. Coons, deceased, being all the owners, stockholders, and corporators of said Maysville and Big Sandy Railroad Company, except John B. Poyntz (who does not unite in or subscribe to this instrument), they being, however, all the officers of said railroad company, and the owners of nearly all of its stock, property, rights and franchises, that they will sell, and do hereby offer to sell, on the terms and conditions hereinafter named, all their rights, title, and interests in and to the stock held by them in the said Maysville and Big Sandy Railroad Company, and in and to its road-bed, bridges, material, rights of way, and property of all kinds whatsoever, and in and to the franchises and charter of said company, so far as they have any power or authority, in law or equity, so to do, as owners, stockholders, corporators, and officers of said company, owning the large majority of the stock, for the sum of fifty-seven thousand and sixty-five dollars, with interest at the rate of six per cent. per annum, until paid, from this date, and that they will, on full payment, transfer, and convey the property, stock, rights, and franchises aforesaid, so far as they lawfully can, by any and all instruments necessary or proper in the premises; the stock, ownership, and rights of the said John B. Poyntz in said company not being included herein, but left to stand upon the original proposition signed by him as aforesaid. And the said Kentucky and Great

Eastern Railway Company, wishing to assert and maintain the said contract of July 15th, 1871, but willing to furnish any additional guaranty in its power to the aforesaid parties for compliance therewith, now hereby binds and obliges itself to accept the foregoing offer, and to pay to said parties making the same the sum of fifty-seven thousand and sixty-five dollars aforesaid, with interest from the 15th day of January, 1873, until paid, in instalments of the bonds of Mason County, subscribed, or which may be subscribed, to its capital stock, to be delivered to said parties as received by said railway company, in amounts bearing the same ratio to the sum herein agreed to be paid as the instalments of bonds from time to time delivered by said county to said railway company bear to the whole number of bonds subscribed by said county as aforesaid, until the whole of said sum of fifty-seven thousand and sixty-five dollars and interest shall be fully paid. And it is agreed by said Kentucky and Great Eastern Railway Company, that if, from any cause, said bonds, or any instalments thereof, shall not be delivered to said railway company by said county, and by reason thereof said bonds, or any instalment thereof, cannot be paid to said parties as herein agreed, then, in that case, and to the extent of such failure, said railroad company shall make payment to said parties in cash, within one hundred and twenty days from the time such bonds should have been delivered by said county to the railway company, and, upon failure to deliver either bonds or cash, as aforesaid, to said parties, then this contract to be null and void. And it is further agreed, as this contract is made to secure the construction of the line of said Big Sandy road to Portsmouth by the Kentucky and Great Eastern Railway Company, that said company shall, within one hundred and twenty days from this date, commence the construction of said road in good faith, and shall continue to prosecute said construction in a reasonably diligent and effectual manner, and the failure to commence the construction, as aforesaid, or, after commencing, the failure to prosecute the same, as aforesaid, for the space of two hundred and forty days, shall, in either event, render this contract void; and, whenever this contract, by its terms, shall become void, then,

upon the happening of such event, said parties representing the Maysville and Big Sandy Railroad Company and their own interests may enter and take possession of the road, property rights, and franchises herein described and conditionally sold. It is finally expressly agreed, that this offer to sell and transfer on full payment shall not admit, under any circumstances, of the intervention of any prior lien on the rights, franchises, and property aforesaid in favor of other parties, a lien being now and always retained thereon in favor of the parties aforesaid until payment in full shall be made. In testimony whereof, all of the parties have hereunto signed, this 15th day of January, 1873."

On the 11th of June, 1873, the proposition so made was accepted by the Great Eastern Company, by the signature of Sands, as its president, to this memorandum at its foot:

"The foregoing proposition is accepted by the Kentucky and Great Eastern Railway Company, which hereby agrees to purchase said property on the terms and conditions expressed above."

On the 22d of May, 1873, at a meeting of the board of directors of the Great Eastern Company, a contract which had before been made by it for the construction of the road was cancelled, with the consent of the contractors, and a resolution was adopted authorizing the president to execute a new contract, similar in terms with the prior one, " with Frank Byrne, doing business under the name of Kentucky and Great Eastern Railroad Construction Company."

On the same day, the contract was executed by the Great Eastern Company and Byrne, as follows:

" This agreement, made and entered into by and between the Kentucky and Great Eastern Railway Company, by its president, under the authority of the board of directors, party of the first part, and Frank P. Byrne, of Ohio, doing business as railroad builder, under the name and style of the ' Kentucky and Great Eastern Railroad Construction Company,' or their assigns, parties of the second part, witnesseth:

" That the said parties of the second part, for and in consideration of the payment in hand of one dollar, received and hereby

acknowledged, and for the further stipulations, covenants, and agreements of the said party of the first part, hereinafter mentioned, hereby agree and bind themselves to construct, finish, and equip, or cause to be constructed, finished, and equipped, the line of railway designated by the charter of said party of the first part, to be known as the Kentucky and Great Eastern Railway, located along the banks of the Ohio River, in the State of Kentucky, commencing at the city of Newport and extending to Catlettsburgh, on the Big Sandy River, being about one hundred and forty-six (146) miles, by such route as may be necessary to fulfil the conditions of any donations to said party of the first part, or any subscriptions to the capital stock of said party of the first part, by municipal, county, or other corporations, or by individuals, as authorized by law; the construction of said road to commence as soon as the right of way therefor shall be procured by the said party of the first part, and the necessary subscriptions voted by the counties along the line, and the work shall be prosecuted so as to have the same completed ready for the running of trains by the 15th day of February, 1878, or as much sooner as it can be done by said parties of the second part. Said construction shall be carried on and made in good and workmanlike manner, with timber structures for crossings or trestling, and the track laid with iron rails not less than fifty-six pounds to the yard, lineal, for main tracks, and fifty-four pounds to the yard, lineal, for side tracks. The equipment shall be such as may be necessary to accommodate the business that may be offered said road on its completion.

"In consideration of the covenants and agreements aforesaid of said parties of the second part, the said party of the first part hereby agrees and binds itself as follows, to wit:

"First. That it will procure and furnish to said parties of the second part, free of cost, and in time to complete said road by the period hereinbefore fixed, the right of way of said road, and also such other property as it is authorized by the laws of Kentucky to procure by purchase or condemnation, for any purpose connected with the construction of bridges, embankments, excavations, spoil banks or borrow pits, turnouts, depots,

engine-houses, shops, turntables, water stations, or other things necessary to the completion and maintenance of said road.

"Second. That it will transfer and deliver to said parties of the second part, or cause to be transferred and delivered to them, all the money, bonds of municipal corporations and counties, or other property or evidences of obligation which have been given or issued, or which may be hereafter given or issued, in payment of any subscription to the capital stock of said party of the first part, or which may have been, or may hereafter be, given by way of donation, including lands, to the said party of the first part, the said transfer and delivery to be made when and as the conditions upon which such subscriptions or donations may be or may have been made are complied with.

"Third. That it will, in part payment of the work of construction agreed to be performed as aforesaid by said parties of the second part, issue or transfer and deliver, or cause to be delivered and transferred, to said parties of the second part, or their assigns, all of the capital stock of the said party of the first part, issued, or to be issued, except so much as may be necessary to maintain, according to the law of the State of Kentucky, the corporate character and powers of the said party of the first part, and such stock as shall have to be issued in payment for the subscriptions to the capital stock of said party of the first part, by the counties and municipal corporations along the line of said road, equalling in no case the amount held by said party of the second part, without their consent. Said issue or transfer of stock to the said parties of the second part to be made in proportionate installments as each or any mile of the track of said road is laid with iron rails, as aforesaid, the said installments, respectively, to be in the proportion to the whole amount as one mile is to the entire length of the road; and each issue or transfer shall be regularly made on the books of said company, and the certificates for said stock delivered to said parties of the second part or their assigns.

"Fourth. That it will, for the consideration aforesaid, further pay to said parties of the second part, or their assigns, the sum

of two million one hundred and ninety thousand ($2,190,000) dollars, in the coupon seven per cent. gold bonds of said party of the first part, secured by mortgage or deed of trust, a first lien upon its corporate property and franchises, which said bonds shall be issued in one series, which shall be for two million one hundred and ninety thousand (2,190,000) dollars, in the aggregate, and shall be in such form and on such terms and conditions as may be authorized by law and as may be approved by said parties of the second part. The payment of said mortgage bonds shall be made as follows, to wit: The said parties of the second part shall be entitled to receive, if they so desire, two hundred and fifty thousand (250,000) dollars of the first mortgage bonds aforesaid in advance of regular payments, as hereinafter stated, giving accountable receipts therefor, which receipts shall be cancelled on the completion of the road and final settlement of the bond payments. Regular payments of said bonds shall be made absolutely to said parties of the second part, or their assigns, in *pro rata* installments, respectively, to be in proportion to the whole amount as one mile is to the whole length of the road, except in the purchase of iron rails, when said party of the second part will be entitled to the use of such an amount of bonds (first mortgage) as will be necessary to make such purchase, to use either for absolute payment or as security on time purchase.

"Fifth. That it will pay, in further consideration aforesaid, to the parties of the second part, or their assigns, for construction of said road, the bonds of the counties along the line of road, issued in payment of the subscription made to the capital stock of the party of the first part, to be not less in amount than one million two hundred thousand (1,200,000) dollars, the deficit, if any, to be paid in cash, or its equivalent.

"Sixth. That it will pay, in further consideration aforesaid, to the parties of the second part, in cash, or, in lieu thereof, in an equipment bond, secured by mortgage on the equipment of the road, its earnings, and the road itself, if the legal consent of the stockholders can be obtained thereto, for the sum of one million two hundred thousand (1,200,000) dollars.

"Seventh. That it will give and use its corporate credit to aid

said parties of the second part in purchasing material, or supplying means, to carry on the said work, and to that end will issue its notes in the name of said party of the first part, in its corporate capacity, from time to time, as the same may be necessary, and will deliver the same to said parties of the second part, to be used for the purposes aforesaid, and such obligations, if met by said party of the first part, shall be made good by said parties of the second part, and all such notes so issued and delivered to said party of the second part shall be regularly and satisfactorily accounted for.

" Eighth. That it further agrees that such parties of the second part have all the earnings of said road during construction, until accepted by said party of the first part.

" Ninth. That it will maintain its corporate organization, and, through its proper officers and agents, do and perform every act or thing necessary or proper to be performed by it, or in its name, in order to protect the rights and interests of said parties of the second part, their heirs and assigns, as stockholders in said railway company, to the extent as hereinbefore provided, and as may be necessary to conform to the requirements of the laws of the State of Kentucky."

The Construction Company represented by Byrne proceeded to do work in constructing the road, and continued till December, 1873, when it ceased work, through pecuniary embarrassment, and never resumed it, being a creditor of the Great Eastern Company, to a large amount, for work done and materials furnished under the contract of May 22, 1873.

On the 19th of April, 1878, Frank P. Byrne, and John Byrne were, on their own petition, adjudged bankrupts by the District Court of the United States for the Southern District of Ohio, Frank P. Byrne being described in the petition as "doing business as the Kentucky and Great Eastern Railway Construction Company," and John Byrne as "interested in profits." A. J. Hodder was appointed assignee of the bankrupts, and the proper assignment was executed to him by the register in bankruptcy, on the 22d of May, 1878.

On the 17th of April, 1880, Hodder, as such assignee, filed a petition in equity, in the Circuit Court of Mason County,

Kentucky, against the Great Eastern Company, the Trust Company, the Big Sandy Company, sundry former stockholders of that company, the owners of the interests purchased under the foreclosure sale of 1869, and sundry judgment creditors of the Great Eastern Company. The gravamen of the petition is, that the Construction Company had, under its contract, expended large sums of money, and incurred much debt, in work on part of the line from Maysville to Catlettsburgh, completing about seven miles of it, and purchasing and putting down the iron rails and other materials; that the road and improvements, as far as completed, and all the improvements put upon it by the Construction Company, are the exclusive property of the plaintiff, and no part of the line and improvements, finished or unfinished, was surrendered or delivered by the Construction Company to the Railway Company; that the value of the improvements so put into the road-bed and road is $350,000, and they are of a permanent and fixed nature; that the plaintiff has a first and prior lien on the entire line of railway and said improvements for the $350,000; that the labor performed, and materials furnished, and improvements made, in the construction of the line of railway, by the Construction Company, under its contract, were on the part of the line which the Great Eastern Company acquired from the Big Sandy Company; that, at the time the contract of the Construction Company was made, the Great Eastern Company had possession and exclusive control of the line of railway purchased from the Big Sandy Company, with the consent of that company and of the defendants who were former stockholders in it, and they knew of the construction contract and of the improvements which were being made under it, and made no objection, but gave express consent, and are estopped from claiming ownership of the line formerly owned by them, and especially as to the improvements made by the Construction Company; that the mortgage to the Trust Company was made after the Great Eastern Company had purchased and taken possession of the Big Sandy road, and, as between the Trust Company and the former stockholders of the Big Sandy road, the Trust Company has priority, but its mortgage lien, if any,

is inferior to that of the plaintiff; and that the Great Eastern Company has abandoned work on the road, and it is being destroyed. The petition asserts that the plaintiff has a first and prior lien on the entire property of the Great Eastern Company, including road, franchises, rights, privileges, improvements, and everything appertaining to the defendant's property, for the $350,000 and interest, and especially a first and prior lien on that part of the line on which the labor was performed, and the materials were furnished, and the improvements were made, by the Construction Company, under its contract, to the value of the same, in case of a sale; that he has no adequate remedy at law; and that the Great Eastern Company is insolvent. The petition prays judgment against the Great Eastern Company for $350,000 and interest; that the plaintiff's claim may be declared a first lien on the road, franchises, and improvements, or a first lien on that part of the line known as the Old Maysville and Big Sandy Railroad, and on the funds derived from its sale; that a receiver be appointed of all the property; and that the road, franchises and improvements, and all property involved in the controversy, be sold by the court and the proceeds distributed as prayed.

On October 28, 1880, the Trust Company appeared and filed its answer and cross-petition. It sets up that the construction contract was void, because several of the directors of the Great Eastern Company who voted to authorize its execution, and to ratify it after it was executed, and whose votes were requisite for the purpose, were partners in the Construction Company. It avers that, under the contract, as soon as the materials and improvements were placed on the line of the railway, they became the property of the Great Eastern Company, and the lien of the mortgage to the Trust Company attached to them and became the first lien on them. It denies the alleged ownership and lien of the plaintiff, and avers that the improvements made were surrendered and delivered to the Great Eastern Company. It asserts a first lien, on behalf of the Trust Company, and the holders of bonds secured by the mortgage, as against the plaintiff, and as against the former owners of the Big Sandy franchises and property, and as against the other defendants, on

the property and franchises of the Great Eastern Company and the Big Sandy Company, and on the improvements made by the Construction Company. It sets up the agreements of July 15, 1871, and January 15, 1873, and avers that, after the first one was made, the Great Eastern Company began work in good faith on the road from Newport to Catlettsburgh, including all the line of the Big Sandy road, and executed the mortgage to the Trust Company; and that, under the mortgage which authorized $2,190,000 of bonds, $443,000 were issued to persons for materials furnished and work done in and about the building of the railway, and for money procured and expended for that purpose. It alleges that a default in the payment of interest on the bonds has occurred, under the terms of the mortgage, and its conditions have become operative, and the Trust Company is entitled to have possession of the mortgaged property and to have it sold, to pay the whole amount of the principal and interest due on the bonds issued. It prays that the plaintiff be decreed to have no lien or one inferior to that of the Trust Company; that the property, rights and franchises of the Great Eastern Company, including those of the Big Sandy Company, be sold, and the bondholders be first paid in full; and that a receiver be appointed of all the property.

On the same day, the Trust Company filed in the State Court a petition and bond for the removal of the cause into the Circuit Court of the United States for the District of Kentucky, on the ground of diversity of citizenship, but no transcript of the record from the State Court appears to have been certified until December 4, 1880, nor filed in the Federal Court until two days later, and meantime proceedings went on in the State Court.

On the 19th of November, 1880, Wadsworth and others filed in the State Court an answer to the petition of Hodder. It alleges that the Construction Company did not perform the construction contract; that the road and improvements are not the property of the plaintiff; that it is not true they were to remain the property of the Construction Company till they were surrendered or delivered to the Great Eastern Company or paid for by it; that the plaintiff does not own and has no

lien on any part of the property, or franchises, or line, or road of the Big Sandy Company, or of any improvements thereon, or on any part of the line of the Great Eastern Company; that, by the agreement of July 15, 1871, the Great Eastern Company, then having no right to construct a line of railway in the counties of Mason, Lewis, Greenup and Boyd, and having no line in those counties, arranged with the stockholders of the Big Sandy Company to buy their stock and property rights in that company, and to construct the Big Sandy line from Maysville to Catlettsburgh; that neither that agreement, nor the one of January 15, 1873, was performed by the Great Eastern Company; that the Construction Company had knowledge of the terms of those agreements at the date of the construction contract; that, after the construction company stopped work, the Big Sandy Company took possession of that part of the line on which the work had been done, and had always been in possession of the rest of the line; and that the Great Eastern Company, after the agreement of January 15, 1873, came to an end, surrendered to the Big Sandy Company the property on the line of that company. It denies that the Great Eastern Company is indebted to the Construction Company.

After the transcript of the record was filed in the Federal Court, Wadsworth and others made a motion to remand the cause, which was denied. The plaintiff then filed a demurrer to the cross-bill of the Trust Company, and Wadsworth and others, and Poyntz, filed separate demurrers to the answer and cross-bill of the Trust Company. In June, 1881, the Court sustained the demurrers and gave the Trust Company leave to amend the cross-bill.

In the decision on the demurrers, 7 Fed. Rep. 793, these points were ruled: (1.) It was not necessary that the stockholders of the Great Eastern Company should authorize the execution of the mortgage to the Trust Company. (2.) The president could legally acknowledge in Ohio the execution of the mortgage. (3.) The cross-bill sufficiently averred that the bonds were held by *bona fide* holders. (4.) The application to foreclose was not premature. (5.) At the date of the mortgage, the Great Eastern Company had no right to build the mort-

gaged road from Newport to Catlettsburgh, unless as a branch of its main stem.   (6.) There is nothing in the mortgage or the cross-bill indicating that any part of the line mortgaged is a branch of the main road authorized to be built, but the mortgage describes the mortgaged line as the "main line."   (7.) The Great Eastern Company had no right to acquire the Big Sandy property without the assent of the holders of a majority in value of its stock, and the cross-bill does not allege such assent.   (8.) Under the terms of the mortgage, and the allegations of the cross-bill, the Big Sandy property was not intended to be mortgaged as future-acquired property.

On the 12th of July, 1881, the Trust Company filed an amended cross-bill, in which it alleged that the purchase made by the agreement of July 15, 1871, was made with the consent and approval of the several stockholders of the Great Eastern Company, or a majority in number and interest of them, and was authorized and accepted by them; and that the line of the Great Eastern Railway, as it existed when the mortgage was executed, acknowledged, and delivered, was located and ran through the seven counties in which the mortgage was recorded. The prayer of the amended cross-bill asks that out of the proceeds of sale the unpaid purchase money of the Big Sandy property be paid before the bondholders are paid.

On the 30th of July, 1881, the plaintiff filed an amended bill, conforming to the equity rules of the Federal Court, and asking for a reformation of the contract of May 22, 1873, if necessary, so as to make it provide that the Construction Company be and remain the sole owner of the improvements put on the line of the railroad, until paid for.   The amended bill also claims a substitution of the plaintiff in the claims of the Great Eastern Company against the Big Sandy Company and Wadsworth and his associates, to the amount of his claim.

On the same day the plaintiff demurred to the cross-bill and amended cross-bill of the Trust Company.   On the 5th of September, 1881, the Great Eastern Company demurred to the same.   On the same day the Trust Company answered the amended bill.   On the 29th of September, 1881, Wadsworth and others and the Big Sandy Company answered the amended

bill, and also the amended cross-bill. There were then excep-
tions by the plaintiff to the answer of the Trust Company to
the amended bill, and to the answer of the Big Sandy Company
to that bill. All of these exceptions and demurrers were, on
hearing, overruled, in December, 1881. On the 6th of Febru-
ary, 1882, the plaintiff answered the amended cross-bill of the
Trust Company. Issues being joined on all the answers, proofs
were taken, and the plaintiff's amended bill was taken as con-
fessed by the defendants who had not answered it, including
the Great Eastern Company. The cause was heard on plead-
ings and proofs, and a decision rendered, on which a decree
was made August 8, 1882, the material parts of which are as
follows:

"The case having been fully argued by counsel and sub-
mitted to the court, and the court being fully advised in the
premises, finds and decrees, that no just claim for relief is
shown against the Maysville and Big Sandy Railroad Company,
or against the Bank of Kentucky, William H. Wadsworth,
John G. Hickman, assignee of Charles B. Coons, John B.
Poyntz, Elizabeth Gray, executrix of Hamilton Gray, deceased,
C. B. Childs, as shareholder in said Maysville and Big Sandy
Railroad Company, H. L. Wilson, administrator of Harrison
Taylor, deceased, as shareholders or part owners of said Mays-
ville and Big Sandy Railroad Company, or otherwise, or against
any of the other defendants, and that said amended bill is dis-
missed, with costs to be taxed; that no just claim for relief is
shown against any of the before-mentioned defendants, or any
of the defendants, under the amended cross-bill of the Farmers'
Loan and Trust Company, except or other than the mortgage
asserted in said amended cross-bill may be shown to cover the
line of railroad of the Kentucky and Great Eastern Railway
Company lying west of the west line of Mason County, Ken-
tucky, and the franchises of said railroad company as organ-
ized, as to which excepted property the complainant in said
amended cross-bill is allowed time until the next term of this
court to make a further showing and prepare for the approval
of the court such decrees as he may be advised, but, as to all
other claims of relief under said amended cross-bill it is dis-

missed, with costs to be taxed; without prejudice, however, to the right of said Farmers' Loan and Trust Company to bring such other suit, if any, as it shall be advised, to recover any rights of way which may have been acquired by or for the Kentucky and Great Eastern Railway Company, for its line of railroad east of the west line of Mason County, other than such rights of way as were acquired by or for the Maysville and Big Sandy Railroad Company, under its charter or by the exercise of its franchises, and which rights of way, if any such there are, may be found to be covered and included in the mortgage by said Kentucky and Great Eastern Railway Company to the said Farmers' Loan and Trust Company."

From that decree the plaintiff and the Trust Company took separate appeals to this court. Since the cases came into this court Rogers Wright has been appointed assignee in bankruptcy, in place of Hodder, and been substituted in the appeals.

The Circuit Court, in its opinion, on final hearing, reached the following conclusions: Even if the construction contract is valid, the plaintiff has no lien on the road-bed, or what was put upon it, either by that contract, or by possession, or under any statute of Kentucky. The work on the road was not commenced in good faith, within six months from July 15, 1871, under the contract of that date. Neither Poyntz, nor the other parties, can take advantage of his refusal to unite in the contract of January 15, 1873. Mr. Sands was authorized to make that contract, and the Great Eastern Company took possession of the Big Sandy property under it. The Construction Company had actual notice of the terms and conditions of that contract, when it entered into the construction contract. The parties making the conditional sale provided for by the contract of January 15, 1873, declared the contract to be void, according to its terms, and re-entered into possession of their property, and their right to do so was recognized by a resolution of the board of directors of the Great Eastern Company; and, as the Construction Company made its contract with actual notice of the terms and conditions of the conditional purchase from the Big Sandy owners, the construction contract was subject to

those terms and conditions, and the Construction Company and the Great Eastern Company are bound by them. The grading, iron, ties, culverts, etc., and all that had become a part of the road-bed of the Big Sandy road, went with it when it was re-taken. The plaintiff shows no reason for not enforcing this forfeiture. If the Construction Company is to be regarded as a distinct company from the Great Eastern Company, having interests adverse to it, then, in view of the evidence, and of the principles laid down in *Wardell* v. *Railroad Co.*, 103 U. S. 651, the construction contract should not be enforced. The plaintiff cannot have relief in this suit, even in respect to rights of way which the Big Sandy Company did not own, or in respect to that part of the track which was re-located. The bill must be dismissed. In respect to the cross-bill, the agreement of July 15, 1871, is shown to have been made with the assent of the holders of a majority of the stock of the Great Eastern Company. If the language of the mortgage embraces the property rights which the Great Eastern Company had at the date of the mortgage, and those subsequently obtained under the contract of January 15, 1873, still only such rights as the Great Eastern Company had were conveyed, and the mortgagee took subject to the same conditions as the Great Eastern Company. When the mortgage was made, the contract of July 15, 1871, had become voidable at the option of the Big Sandy owners, the contract of January 15, 1873, was made before any of the mortgage bonds were issued, and the mortgagee took only those rights which the mortgagor had, as against the persons who made a conditional sale of the Big Sandy road. The mortgagee cannot separate the contract of July 15, 1871, from that of January 15, 1873, but must take them as the mortgagor took them. The title was never in the mortgagor, and, when the Big Sandy Company resumed the possession of its property, under the contracts, the mortgagee was bound thereby. If the mortgagee had, within a reasonable time, sought to set aside the forfeiture, and to be allowed the benefit of any enhancement in the value of the property by reason of improvements, this might have been allowed, but, as the work stopped in 1873, and the mortgagee could have sought a remedy under the

mortgage at any time after that year, the delay has been un-reasonable.    The delay would not have been so material if the provisions in the contract of January 15, 1873, for re-entry, had been made solely to secure the purchase money, but the speedy construction of the road was a reason, if not the chief one, why the original owners retained the right to declare the contract void and to re-enter into possession.    As to any rights of way which the Great Eastern Company obtained along the line of the Big Sandy road, other than those purchased from the Big Sandy Company, although Wadsworth and his associates are not entitled to them, the cross-bill is not so drawn, nor the evidence such, that those rights can be subjected to the mortgage in this proceeding.

This comprehensive statement of the conclusions reached by the Circuit Court, as indicating the views it took of the facts and the law in this case, may be taken as an announcement of the results at which this court has arrived, in affirmance of the decree of the Circuit Court in all particulars.    It is necessary to add only a few observations.

By the terms of the contract of January 15, 1873, the purchase money of the Big Sandy property was to be paid in bonds of the county of Mason, or in cash, within specified times, and, on failure to do so, the contract was to become null and void.    Mason County never delivered any bonds to the Great Eastern Company, and no payment of bonds or cash was made to the Big Sandy owners.    The sale was conditional. No ownership or title passed, and it was expressly provided that, until full payment should be made, no prior lien should intervene on the Big Sandy property, as against the lien of the vendors.

The terms of the construction contract are inconsistent with the idea of any ownership of the constructed road by the Construction Company, or any lien on it by that company.    That company was to have all the money, municipal bonds, and property given or issued in payment of subscriptions to stock, and all stock not necessary to maintain the charter or not issued to municipal corporations for subscriptions to stock, and also the $2,190,000 of mortgage bonds, secured by the mort-

gage as "a first lien," and $1,200,000 in an equipment bond, secured by an equipment mortgage. In other words, it was to have everything except the road, and the Great Eastern Company was necessarily to have and own that, so as to be able to give a mortgage on it, as a "first lien." Nor is there anything in the construction contract suggesting a direct lien in favor of the Construction Company. The provision for giving to that company all the earnings of the road "during construction" and "until accepted" by the Great Eastern Company, is vague and indefinite, but it cannot be construed as giving a lien, for that would be inconsistent with the whole tenor of the instrument.

Many questions were discussed by counsel at the bar, and in their briefs, and we have given attention to all the views and arguments on the part of the respective appellants, but the considerations above stated, on which the case was disposed of by the Circuit Court, seem to us to be controlling, and to make it unnecessary to say anything further.

*Decree affirmed.*

Mr. Justice Matthews did not sit in these cases or take any part in their decision.