## RAILWAY EXPRESS AGENCY, INC. ET AL. v. NEW YORK.

No. 51. Argued December 6, 1948.—Decided January 31, 1949.

*Ralph M. Carson* argued the cause for appellants. With him on the brief were *William R. Meagher* and *James V. Lione.*

*Stanley Buchsbaum* argued the cause for appellee. With him on the brief were *John P. McGrath* and *Seymour B. Quel.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Section 124 of the Traffic Regulations of the City of New York[1] promulgated by the Police Commissioner provides:

"No person shall operate, or cause to be operated, in or upon any street an advertising vehicle; pro-

---

[1] This regulation was promulgated by the Police Commissioner pursuant to the power granted the police department under § 435

vided that nothing herein contained shall prevent the putting of business notices upon business delivery vehicles, so long as such vehicles are engaged in the usual business or regular work of the owner and not used merely or mainly for advertising."

Appellant is engaged in a nation-wide express business. It operates about 1,900 trucks in New York City and sells the space on the exterior sides of these trucks for advertising. That advertising is for the most part unconnected with its own business.[2] It was convicted in the magistrate's court and fined. The judgment of conviction was sustained in the Court of Special Sessions. 188 Misc. 342, 67 N. Y. S. 2d 732. The Court of Appeals affirmed without opinion by a divided vote. 297 N. Y. 703, 77 N. E. 2d 13. The case is here on appeal. Judicial Code § 237 (a), 28 U. S. C. § 344 (a), as amended, now 28 U. S. C. § 1257.

The Court in *Fifth Ave. Coach Co.* v. *New York,* 221 U. S. 467, sustained the predecessor ordinance to the present regulation over the objection that it violated the due process and equal protection clauses of the Fourteenth Amendment. It is true that that was a municipal

---

of the New York City Charter which provides as follows: "The police department and force shall have the power and it shall be their duty to . . . regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for the facilitation of traffic and the convenience of the public as well as the proper protection of human life and health; . . . The commissioner shall make such rules and regulations for the conduct of pedestrian and vehicular traffic in the use of the public streets, squares and avenues as he may deem necessary . . . ."

[2] The advertisements for which appellant was convicted consisted of posters from three by seven feet to four by ten feet portraying Camel Cigarettes, Ringling Brothers and Barnum & Bailey Circus, and radio station WOR. Drivers of appellant's trucks carrying advertisements of Prince Albert Smoking Tobacco and the United States Navy were also convicted.

ordinance resting on the broad base of the police power, while the present regulation stands or falls merely as a traffic regulation. But we do not believe that distinction warrants a different result in the two cases.

The Court of Special Sessions concluded that advertising on vehicles using the streets of New York City constitutes a distraction to vehicle drivers and to pedestrians alike and therefore affects the safety of the public in the use of the streets.[3] We do not sit to weigh evidence on the due process issue in order to determine whether the regulation is sound or appropriate; nor is it our function to pass judgment on its wisdom. See *Olsen* v. *Nebraska,* 313 U. S. 236. We would be trespassing on one of the most intensely local and specialized of all municipal problems if we held that this regulation had no relation to the traffic problem of New York City. It is the judgment of the local authorities that it does have such a relation. And nothing has been advanced which shows that to be palpably false.

The question of equal protection of the laws is pressed more strenuously on us. It is pointed out that the regulation draws the line between advertisements of products sold by the owner of the truck and general advertisements. It is argued that unequal treatment on the basis of such a distinction is not justified by the aim and purpose of the regulation. It is said, for example, that one of appellant's trucks carrying the advertisement of a commercial house would not cause any greater distraction of pedestrians and vehicle drivers than if the

---

[3] The element of safety was held to be one of the standards by which the regulations of the Police Commissioner were to be judged. We accept that construction of the authority of the Police Commissioner under § 435 of the Charter, note 1, *supra.* See *Price* v. *Illinois,* 238 U. S. 446, 451; *Hartford Accident Co.* v. *Nelson Co.,* 291 U. S. 352, 358; *Central Hanover Bank Co.* v. *Kelly,* 319 U. S. 94, 97.

commercial house carried the same advertisement on its own truck. Yet the regulation allows the latter to do what the former is forbidden from doing. It is therefore contended that the classification which the regulation makes has no relation to the traffic problem since a violation turns not on what kind of advertisements are carried on trucks but on whose trucks they are carried.

That, however, is a superficial way of analyzing the problem, even if we assume that it is premised on the correct construction of the regulation. The local authorities may well have concluded that those who advertise their own wares on their trucks do not present the same traffic problem in view of the nature or extent of the advertising which they use. It would take a degree of omniscience which we lack to say that such is not the case. If that judgment is correct, the advertising displays that are exempt have less incidence on traffic than those of appellants.

We cannot say that that judgment is not an allowable one. Yet if it is, the classification has relation to the purpose for which it is made and does not contain the kind of discrimination against which the Equal Protection Clause affords protection. It is by such practical considerations based on experience rather than by theoretical inconsistencies that the question of equal protection is to be answered. *Patsone* v. *Pennsylvania,* 232 U. S. 138, 144; *Marcus Brown Co.* v. *Feldman,* 256 U. S. 170, 198–199; *Metropolitan Co.* v. *Brownell,* 294 U. S. 580, 585–586. And the fact that New York City sees fit to eliminate from traffic this kind of distraction but does not touch what may be even greater ones in a different category, such as the vivid displays on Times Square, is immaterial. It is no requirement of equal protection that all evils of the same genus be eradicated or none at all. *Central Lumber Co.* v. *South Dakota,* 226 U. S. 157, 160.

It is finally contended that the regulation is a burden on interstate commerce in violation of Art. I, § 8 of the Constitution. Many of these trucks are engaged in delivering goods in interstate commerce from New Jersey to New York. Where traffic control and the use of highways are involved and where there is no conflicting federal regulation, great leeway is allowed local authorities, even though the local regulation materially interferes with interstate commerce. The case in that posture is controlled by *S. C. Hwy. Dept.* v. *Barnwell Bros.*, 303 U. S. 177, 187 *et seq.* And see *Maurer* v. *Hamilton,* 309 U. S. 598.

*Affirmed.*

MR. JUSTICE RUTLEDGE acquiesces in the Court's opinion and judgment, *dubitante* on the question of equal protection of the laws.

MR. JUSTICE JACKSON, concurring.

There are two clauses of the Fourteenth Amendment which this Court may invoke to invalidate ordinances by which municipal governments seek to solve their local problems. One says that no state shall "deprive any person of life, liberty, or property, without due process of law." The other declares that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

My philosophy as to the relative readiness with which we should resort to these two clauses is almost diametrically opposed to the philosophy which prevails on this Court. While claims of denial of equal protection are frequently asserted, they are rarely sustained. But the Court frequently uses the due process clause to strike down measures taken by municipalities to deal with activities in their streets and public places which the local

authorities consider as creating hazards, annoyances or discomforts to their inhabitants. And I have frequently dissented when I thought local power was improperly denied. See, for example, opinion in *Douglas* v. *Jeannette* and companion cases, 319 U. S. 157, 166; and dissents in *Saia* v. *New York*, 334 U. S. 558, 566; *Prince* v. *Massachusetts*, 321 U. S. 158, 176.

The burden should rest heavily upon one who would persuade us to use the due process clause to strike down a substantive law or ordinance. Even its provident use against municipal regulations frequently disables all government—state, municipal and federal—from dealing with the conduct in question because the requirement of due process is also applicable to State and Federal Governments. Invalidation of a statute or an ordinance on due process grounds leaves ungoverned and ungovernable conduct which many people find objectionable.

Invocation of the equal protection clause, on the other hand, does not disable any governmental body from dealing with the subject at hand. It merely means that the prohibition or regulation must have a broader impact. I regard it as a salutary doctrine that cities, states and the Federal Government must exercise their powers so as not to discriminate between their inhabitants except upon some reasonable differentiation fairly related to the object of regulation. This equality is not merely abstract justice. The framers of the Constitution knew, and we should not forget today, that there is no more effective practical guaranty against arbitrary and unreasonable government than to require that the principles of law which officials would impose upon a minority must be imposed generally. Conversely, nothing opens the door to arbitrary action so effectively as to allow those officials to pick and choose only a few to whom they will apply legislation and thus to escape the political retribution that might be visited upon them if larger numbers were af-

fected. Courts can take no better measure to assure that laws will be just than to require that laws be equal in operation.

This case affords an illustration. Even casual observations from the sidewalks of New York will show that an ordinance which would forbid all advertising on vehicles would run into conflict with many interests, including some, if not all, of the great metropolitan newspapers, which use that advertising extensively. Their blandishment of the latest sensations is not less a cause of diverted attention and traffic hazard than the commonplace cigarette advertisement which this truck-owner is forbidden to display. But any regulation applicable to all such advertising would require much clearer justification in local conditions to enable its enactment than does some regulation applicable to a few. I do not mention this to criticize the motives of those who enacted this ordinance, but it dramatizes the point that we are much more likely to find arbitrariness in the regulation of the few than of the many. Hence, for my part, I am more receptive to attack on local ordinances for denial of equal protection than for denial of due process, while the Court has more often used the latter clause.

In this case, if the City of New York should assume that display of any advertising on vehicles tends and intends to distract the attention of persons using the highways and to increase the dangers of its traffic, I should think it fully within its constitutional powers to forbid it all. The same would be true if the City should undertake to eliminate or minimize the hazard by any generally applicable restraint, such as limiting the size, color, shape or perhaps to some extent the contents of vehicular advertising. Instead of such general regulation of advertising, however, the City seeks to reduce the hazard only by saying that while some may, others may not exhibit such appeals. The same display, for exam-

ple, advertising cigarettes, which this appellant is forbidden to carry on its trucks, may be carried on the trucks of a cigarette dealer and might on the trucks of this appellant if it dealt in cigarettes. And almost an identical advertisement, certainly one of equal size, shape, color and appearance, may be carried by this appellant if it proclaims its own offer to transport cigarettes. But it may not be carried so long as the message is not its own but a cigarette dealer's offer to sell the same cigarettes.

The City urges that this applies equally to all persons of a permissible classification, because all that it does is (1) forbid all inhabitants of New York City from engaging in the business of selling advertising space on trucks which move as part of the city traffic; (2) forbid all truck owners from incidentally employing their vehicles for such purpose, with the exception that all truck owners can advertise their own business on their own trucks. It is argued that, while this does not eliminate vehicular advertising, it does eliminate such advertising for hire and to this extent cuts down the hazard sought to be controlled.

That the difference between carrying on any business for hire and engaging in the same activity on one's own is a sufficient one to sustain some types of regulations of the one that is not applied to the other, is almost elementary. But it is usual to find such regulations applied to the very incidents wherein the two classes present different problems, such as in charges, liability and quality of service.

The difference, however, is invoked here to sustain a discrimination in a problem in which the two classes present identical dangers. The courts of New York have declared that the sole nature and purpose of the regulation before us is to reduce traffic hazards. There is not even a pretense here that the traffic hazard created

by the advertising which is forbidden is in any manner or degree more hazardous than that which is permitted. It is urged with considerable force that this local regulation does not comply with the equal protection clause because it applies unequally upon classes whose differentiation is in no way relevant to the objects of the regulation.

As a matter of principle and in view of my attitude toward the equal protection clause, I do not think differences of treatment under law should be approved on classification because of differences unrelated to the legislative purpose. The equal protection clause ceases to assure either equality or protection if it is avoided by any conceivable difference that can be pointed out between those bound and those left free. This Court has often announced the principle that the differentiation must have an appropriate relation to the object of the legislation or ordinance. See, for example, *Mayflower Farms* v. *Ten Eyck,* 297 U. S. 266; *Smith* v. *Cahoon,* 283 U. S. 553. In the latter case a motor vehicle regulation was struck down upon citation of many authorities because "such a classification is not based on anything having relation to the purpose for which it is made." 283 U. S. 553, 567. If that were the situation here, I should think we should reach a similar conclusion.

The question in my mind comes to this. Where individuals contribute to an evil or danger in the same way and to the same degree, may those who do so for hire be prohibited, while those who do so for their own commercial ends but not for hire be allowed to continue? I think the answer has to be that the hireling may be put in a class by himself and may be dealt with differently than those who act on their own. But this is not merely because such a discrimination will enable the lawmaker to diminish the evil. That might be done by many classifications, which I should think wholly unsustainable.

It is rather because there is a real difference between doing in self-interest and doing for hire, so that it is one thing to tolerate action from those who act on their own and it is another thing to permit the same action to be promoted for a price.

Certainly the presence or absence of hire has been the hook by which much highway regulation has been supported. Rights usual to passengers may be denied to the nonpaying guest in an automobile to limit vexatious litigation. *Silver* v. *Silver,* 280 U. S. 117. A state may require security against injuries from one using the highways for hire that it does not exact from others because, as Mr. Justice Sutherland put it, "The streets belong to the public and are primarily for the use of the public in the ordinary way. Their use for the purposes of gain is special and extraordinary and, generally at least, may be prohibited or conditioned as the legislature deems proper." *Packard* v. *Banton,* 264 U. S. 140, 144. In the case of those who let out automobiles to those who drive them, the Court, through Mr. Justice Butler, said of the State, "It may prohibit or condition as it deems proper the use of city streets as a place for the carrying on of private business." *Hodge Co.* v. *Cincinnati,* 284 U. S. 335, 337. See also *Sproles* v. *Binford,* 286 U. S. 374, 393; *Stephenson* v. *Binford,* 287 U. S. 251, 278; *Hicklin* v. *Coney,* 290 U. S. 169; *Stanley* v. *Public Utilities Commission,* 295 U. S. 76; *Aero Transit Co.* v. *Georgia Commission,* 295 U. S. 285; *Dixie Ohio Express Co.* v. *State Revenue Commission,* 306 U. S. 72. The rule was flatly stated for the Court by Mr. Justice Brandeis: "In dealing with the problem of safety of the highways, as in other problems of motor transportation, the State may adopt measures which favor vehicles used solely in the business of their owners, as distinguished from those which are operated for hire by carriers who use the highways as their place of business." *Bradley* v. *Public Utilities Commission,* 289

U. S. 92, 97. However, it is otherwise if the discriminations within the regulated class are based on arbitrary differences as to commodities carried having no relation to the object of the regulation. *Smith* v. *Cahoon,* 283 U. S. 553. See also *Quaker City Cab Co.* v. *Pennsylvania,* 277 U. S. 389.

Of course, this appellant did not hold itself out to carry or display everybody's advertising, and its rental of space on the sides of its trucks was only incidental to the main business which brought its trucks into the streets. But it is not difficult to see that, in a day of extravagant advertising more or less subsidized by tax deduction, the rental of truck space could become an obnoxious enterprise. While I do not think highly of this type of regulation, that is not my business, and in view of the control I would concede to cities to protect citizens in quiet and orderly use for their proper purposes of the highways and public places (see dissent in *Saia* v. *New York,* 334 U. S. 558, 566), I think the judgment below must be affirmed.