**Waldo FRANK, Appellant**

v.

**Christian A. HERTER, Secretary of State, Appellee.**

No. 15059.

United States Court of Appeals
District of Columbia Circuit.

Argued June 1, 1959.

Decided July 6, 1959.

**Richard M. JAMES, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 14847.

United States Court of Appeals
District of Columbia Circuit.

Argued June 26, 1959.

Decided July 2, 1959.

———◇———

Mr. Leonard B. Boudin, New York City, with whom Mr. David Rein, Washington, D. C., was on the brief, for appellant.

Mr. F. Kirk Maddrix, with whom Messrs. Samuel L. Strother and Anthony F. Cafferky, Attys., Dept. of Justice, were on the brief, for appellee.

Before BAZELON, FAHY and BURGER, Circuit Judges.

PER CURIAM.

The questions involved in this case were necessarily decided by this court in Worthy v. Herter, —— U.S.App.D.C. ——, 270 F.2d 905. On the authority of that decision the judgment of the District Court granting the motion of the Secretary for summary judgment, denying appellant's motion for summary judgment, and dismissing the complaint, is

Affirmed.

BURGER, Circuit Judge (concurring).

I do not think this court in Worthy v. Herter, —— U.S.App.D.C. ——, 270 F.2d 905 reached or was confronted with an important issue here presented by appellant. That issue was whether, conceding the Secretary's power to limit travel to Communist China, the formula and criteria prescribed for the selection of a limited number of news correspondents were unconstitutionally discriminatory as to this appellant.

Appellant is the holder of a duly issued passport from the Secretary of State which contains a provision:

"This passport is not valid for travel to the following areas under the control of authorities with which the United States does not have diplomatic relations: Albania, Bulgaria and those portions of China, Korea and Viet-Nam under Communist control."

On application of appellant the Secretary of State declined to remove the restriction against travel to Communist China.

In support of his complaint seeking removal of the travel restraint clause as to Communist China and to enjoin the enforcement of sanctions against him, appellant makes various contentions: (1) that the Secretary of State has no statutory authority to prevent United States citizens from traveling to the China mainland by so restricting travel and by threatening to invoke civil and criminal sanctions for violation of restrictions; (2) that these travel restrictions are a violation of appellant's First Amendment rights of free speech and press and a deprivation of his right to earn a living by activities requiring travel; additionally that he has been denied due process under the Fifth Amendment; (3) that the Secretary's action in granting travel rights to 25 or 30 representatives of various news services while denying the same rights to appellant individually is an unreasonable discrimination in violation of due process under the Fifth Amendment.

Appellant's pleadings describe him as a writer, scholar and teacher who has lectured here and abroad and who writes for 20 Latin American papers. Appellant asserts he has an invitation to lec-

ture at the University of Peking, capital of Communist China, for "early 1959" and that early resolution of his rights is important to him.

The Secretary of State responds, as he did in Worthy v. Herter, supra: (1) that an essential feature of United States policy toward world Communism generally and Communist China in particular is to withhold recognition, de facto and de jure, of that regime; (2) that in the implementation of that policy travel of United States citizens to the China mainland, among other places under Communist control, has been prohibited; (3) that the Executive's power to conduct foreign affairs springs from the inherent powers of a sovereign, confirmed by the Constitution and that this power has been implemented by joint action of the President and Congress in statutes; (4) that in implementation of its policy, the Secretary has recently developed a formula to permit a limited number of news gathering agencies to designate representatives to receive passports to Communist China, the agencies being selected on the basis of established past interest in foreign news coverage.

The first two contentions of appellant are disposed of by our decision in Worthy v. Herter, and since that is dispositive no extended discussion of those issues is needed. The reasoning in the Worthy case seems to me unassailable and I would reach the same conclusion on the first two points raised in this case for essentially the same reasons as set out so clearly in that case by Chief Judge Prettyman.

The challenge to the Secretary's action as being discriminatory is, however, not necessarily controlled by the Worthy case and I now deal with that issue separately, as I think must be done.

It is axiomatic that the conduct of foreign affairs necessarily involves flexible measures and policies which can be adjusted to meet changing conditions. Just as Communist China altered its former rigid policy of admitting no American newsmen, this country must be free to alter its policies in that connection if those in charge of these purely political decisions think it is in the interest of the United States to do so. There is always risk that the Communist regime may try to make hostages of these Americans, as the Communists have so often done in Hungary, Yugoslavia and are now doing in Communist China. This is a calculated risk and to the extent permitted it should be allowed only in the discretion of those in possession of information such as the Secretary has. No American is sent there and those who seek to go take whatever risks are involved.

In the implementation of our foreign policy and especially in relation to Communist China, the State Department recently concluded that a limited number, approximately 40, news representatives would be permitted to go to the Chinese mainland, on an experimental and temporary basis, provided the forces in control of that area would receive them. This threshold decision is political in the highest sense and is not reviewable on any basis in any circumstance by any court. Obviously, judges have neither the information essential to evaluate such a decision nor the competence and experience to appraise the information even if by chance it should be made available to them. Courts have no more occasion or power to inquire into such decisions than the State Department would have to inquire into the time allowed for oral argument or the length of printed briefs on appeals in this court.

The second phase of the Secretary's decision, that dealing with the manner of selection of the correspondents to be afforded travel privileges to China's mainland, however is not similarly immune to judicial review. It is reviewable for, among other things, arbitrariness which would render the basis of the choice discriminatory. If, for example, the choice was limited only to Democrats or only to Republicans, obviously that would be improper and would fall. But judicial review even of the formula of selection is narrow and it is limited to determining whether the basis of the

choice bears some rational relationship to the ends to be served. The distinction made between news agencies with a demonstrated interest in foreign news coverage and individual reporters must have some relevance to the purpose to be achieved. Cf. Currin v. Wallace, 1939, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441; Railway Express Agency v. People of State of New York, 1949, 336 U.S. 106, 110, 69 S.Ct. 463, 93 L.Ed. 533; Mayflower Farms, Inc. v. Ten Eyck, 1936, 297 U.S. 266, 274, 56 S.Ct. 457, 80 L.Ed. 675 (Cardozo dissenting); Stanley v. Public Util. Com'n, 1935, 295 U.S. 76, 55 S.Ct. 628, 79 L.Ed. 1311; Murphy v. State of California, 1912, 225 U.S. 623, 32 S.Ct. 697, 56 L.Ed. 1229; Lindsley v. Natural Carbonic Gas Co., 1911, 220 U.S. 61, 78–79, 31 S.Ct. 337, 55 L.Ed. 369; Watson v. State of Maryland, 1910, 218 U.S. 173, 30 S.Ct. 644, 54 L.Ed. 987.

The Secretary invited each news gathering agency with a demonstrated interest in reporting foreign news to apply for leave to go to the China mainland. Specifically he set as an eligibility criterion the maintenance of at least one full-time correspondent overseas. The invitation went, on this basis, to 40 or more news agencies. We are told 30 such agencies made application and that only one correspondent designated by a news agency has been granted leave to enter mainland China by the forces in control of that area.

Of course, the fact that the Communists might possibly try to exercise a careful choice of United States newsmen thought by them to be friendly to Communism, or "neutralist" in their sympathies would not necessarily justify our Government in using an individual's established and demonstrated hostility to Communism as the sole criterion for its selection of the 40 American newsmen. But even the probability that the Communists will try to secure some advantage out of admitting American news reporters to the mainland emphasizes the strictly political nature of the entire problem.

Our Government has decided to try out this program of allowing some news correspondents to go to Communist China on an "experimental and temporary basis" because presumably, as a calculated risk, in the conduct of foreign affairs it may help our ultimate objectives of world peace and stability, reduction of tensions, and resistance to Communism. In such an experiment the political branches of the government must be allowed wide latitude in carrying out its policy.

It can be assumed that appellant possesses the qualifications to observe, interpret and report events on China's mainland. But obviously the Secretary could not permit every United States citizen so qualified to travel to Communist China in light of complex political factors so well described by Judge Prettyman in Worthy v. Herter. Nor can it be said that every newspaper in the United States could send one reporter. Simply as a matter of numbers, a line must be drawn somewhere. The foreign policy considerations give the Secretary wide latitude in drawing a line and defining criteria.

It has been pointed out that having failed to achieve traditional diplomatic recognition from the United States, Communist China has for years carried on a program and policy of "people's diplomacy" with private, unofficial contacts and exchanges designed to achieve on an unofficial basis that which, as a matter of deliberate national policy we have denied it. At stake are vast interests not the least of which is a possible seat in the Security Council of the United Nations. Here again, the correctness of our policy of thus frustrating Communist objectives is not open to judicial scrutiny any more than would be the defense plans of the Joint Chiefs of Staff or the decision to abandon or not abandon aircraft carriers in favor of some other weapon.

Our duty is not to decide whether the Secretary of State has developed the best formula and criteria for this "experimental and temporary program" of al-

lowing a limited number of news correspondents to go to a previously proscribed area, or whether 40 is the correct number, but simply whether he has exceeded his authority in acting as he has thus far, as shown by this record.

I agree, first, with the holding that the Secretary has not exceeded his powers as defined in Worthy v. Herter, and second, I would hold explicitly (as my colleagues do by implication) that the formula and criteria established for the selection of the "limited number" of representatives of news gathering agencies are not discriminatory in the sense urged by appellant.[1]

[1.] The Secretary's brief tells us that if one of the news gathering agencies which meets the standards prescribed should designate appellant as its correspondent, he may go to the mainland of China if he can get in.