Keating, J. (dissenting).
Although I concur in most of Judge Burke’s opinion and would construe the Taylor Law as granting a right to trial by jury here in order to avoid reaching a serious constitutional question (Kent v. Dulles, 357 U. S. 116), I prefer to rest my dissent primarily on the constitutional mandate involved. In light of the majority’s treatment of this point, I find it desirable to outline briefly the basis of my conclusion that, even if the Taylor Law does not provide a right to trial by jury to the appellants, the 1 ‘ equal protection ’ ’ clause of the Fourteenth Amendment does.
The “ equal protection” clause stands as a guardian and protector of minorities of every kind against every form of irrational discrimination. It is manifestly far easier, politically, to pass legislation which touches adversely only a small group. The “ equal protection” clause seeks to control this tendency by requiring the Legislature to extend its classification to all persons or groups fairly within the legislative policy. Justice Jackson in his concurring opinion in Railway Express v. New York (336 U. S. 106, 112-113) recognized this fundamental purpose of the “ equal protection ” clause when he wrote: “ The framers of the Constitution knew, and we should not forget today, that there is no more effective practical guaranty against arbitrary and unreasonable government than to require that the principles of law which officials would impose upon a minority must be imposed generally. Conversely, nothing opens the door to arbitrary action so effectively as to allow those officials to pick and choose only a few to whom they will apply legislation *133 and thus to escape the political retribution that might be visited upon them if larger numbers were affected. ’ ’
Later on in the opinion he summarized his views in a particularly apt phrase: ‘ ‘ [W]e are much more likely to find arbitrariness in the regulation of the few than of the many ” (336 U. S., p. 113). I would examine the issue raised by this appeal in light of Justice Jackson’s analysis of the “ equal protection ” clause.
In the case upon which the majority rely (United States v. Mine Workers, 330 U. S. 258, 298), the “ equal protection ” point was not even raised. Moreover, the case was decided in a day when the importance of the ‘' equal protection” clause, as a vital tool in the preservation of a just society, was only then beginning to be felt.
The question is not whether public employees differ from private employees or whether the former may not strike, while the latter may, but whether the differences between them are pertinent to the subject with respect to which the classification is made, to wit, the right to trial by jury (Baxstrom v. Herold, 383 U. S. 107, 111). More precisely, the issue here is whether the denial of a jury trial is necessary to the functioning of the Taylor Law. The “ one vital reason ” offered by the majority to justify the lack of a jury trial requirement, where public employees or their representative organizations are involved, is an alleged need for “ Prompt determinations ” “in criminal contempt proceedings under the Taylor Law ” ‘ ‘ unencumbered by the long, drawn-out procedures involved in jury trials ” “in order to deter the continuance of paralyzing public strikes by visiting speedy punishment on the offenders.” (Majority opn., p. 117.) In contrast to almost every other criminal statute, however, the Taylor Law postpones the enforcement of all of its penalties against the union until after all appeals are exhausted (Judiciary Law, § 751, subd. 2, par. [d], cl. [i]). While it is conceivable that the appellate process could terminate prior to the end of the strike, this has yet to happen. Therefore, in the case of the union, the purported justification for denying a jury trial has no application at all.
In the case of the short jail terms provided by the statute as punishment against union leaders, and which can be imposed immediately, it is of crucial significance that, in three major strikes against the City of New York since the Taylor Law *134 was enacted, the city found it impossible effectively to enforce the short jail sanction to end the strikes.* The same situation prevailed for 20 years under the Condon-Wadlin Act (L. 1947, ch. 391). Therefore, while the Legislature has the right to experiment, we are here dealing with a situation where the reasons offered for drawing the distinction have been shown by historical precedent to have no basis.
When it is remembered that employees of private utilities have the power to plunge one of the great cities of the world into total darkness or complete silence, that employees of privately owned railroads and shipping lines have the power to deprive the residents of that city of vital food and fuel, that private sanitation workers, who carry away a substantial portion of the refuse in New York City, have the power to endanger the health of millions of its inhabitants and that thousands of other workers, carrying out activities vital to the life and safety of the city, may demand a trial by jury if they are charged with violation of a court order restraining a strike, the fallacy in the reasoning which would deny a jury trial to these defendants is readily exposed. References to the dangers to the children from the teachers’ strike, real as those dangers may be, are not a substitute for a penetrating analysis of the labels “public” and “private” employees. In my view, the “ public ”-“ private ” distinction cannot be maintained as a constitutionally viable difference with respect to the right of a jury trial.
Judges Scieeppi, Breitel and Jasen concur with Chief Judge Fued ; Judge Burke dissents and votes to reverse in an opinion in which Judges Bergan and Keating concur, Judge Keating in a separate opinion in which Judges Burke and Bergan also concur.
Orders affirmed, etc.

 The majority opinion argues (n. 2) that in a recent strike in the public sector a union leader was imprisoned for contempt during the course of the strike. What the argument overlooks is that the lack of a jury trial did not speed the end of the strike for in that case as well as others the strikes continued.