**GLOBE FUR DYEING CORPORATION,**
**Plaintiff,**

v.

**The UNITED STATES of America et al., Defendants.**

**Civ. A. No. 78–0693.**

United States District Court,
District of Columbia.

Nov. 16, 1978.

Stephen S. Boynton, Washington, D. C., for plaintiff.

Margaret Strand, U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge:

### I. *Introduction*

Prior to the enactment of the Marine Mammal Protection Act (the "Act"), 16 U.S.C. § 1361 et seq., plaintiff, Globe Fur Dyeing Company, imported, dyed and sold animal skins. Plaintiff challenges the provision of the Act which prohibits importing marine mammals killed at less than eight months of age or while nursing; 16 U.S.C. § 1372(b)(2). It seeks declaratory and injunctive relief.

Plaintiff alleges that § 1372(b)(2) violates the due process clause of the Fifth Amendment of the Constitution and the guarantee of equal protection of the laws as applied to the federal government through the Fifth Amendment. Plaintiff contends that the objective of the Act is the furtherance of wildlife conservation according to scientific principles of management. The "age and nursing" provision of the Act, it argues, was a political response to public concern and emotionalism and bears no reasonable relationship to the goal of the Act and is therefore unconstitutional.

The case is before the Court on cross-motions for summary judgment. Applying the relevant constitutional analysis to undisputed material facts, the Court holds that the challenged provision does not violate the guarantees of either due process or equal protection. The findings of fact and conclusions of law which lead to this holding follow.

### II. *Findings of Fact*

1. Plaintiff was an exporter, dyer and seller of marine mammal skins. At least part of plaintiff's business has been prohibited by § 1372(b)(2).

2. 16 U.S.C. § 1372(b) provides in part that

Except pursuant to a permit for scientific research issued under section 1374(c) of this title, it is unlawful to import into the United States any marine mammal if such mammal was—

(1) pregnant at the time of taking;

(2) nursing at the time of taking, or less than eight months old, whichever occurs later;

(3) taken from a species or population stock which the Secretary has . . . designated as a depleted species or stock

. . .

(4) taken in a manner deemed inhumane by the Secretary.

3. 16 U.S.C. § 1361 provides in part that

(1) certain species and population stocks of marine mammals are, or may be, in danger of extinction or depletion as a result of man's activities;

(2) such species and population stocks should not be permitted to diminish beyond the point at which they cease to be a significant functioning element in the ecosystem of which they are a part and, consistent with this major objective they should not be permitted to diminish below their optimum sustainable population

. . .

(3) there is inadequate knowledge of the ecology and population dynamics of such marine mammals and of the factors which bear upon their ability to reproduce themselves successfully;

(4) negotiations should be undertaken immediately to encourage the development of international arrangements for research on, and conservation of, all marine mammals;

. . . . .

(6) marine mammals have proven themselves to be resources of great international significance, esthetic and recreational as well as economic, and it is the sense of the Congress that they should be protected and encouraged to develop to the greatest extent feasible commensurate with sound policies of resource management and that the primary objective of their management should be to maintain the health and stability of the marine ecosystem. Whenever consistent with this primary objective, it should be the goal to obtain an optimum sustainable population keeping in mind the optimum carrying capacity of the habitat.

4. The Act states a number of goals. Several paragraphs of § 1361 define the goal of conservation of marine mammals, e. g., paragraphs (1), (2) and (4). In paragraphs (3) and (4), Congress took account of the dearth of scientific knowledge about mammal conservation and sought to expand that knowledge. Paragraph (6) articulated

the distinct goal of preserving mammals in recognition of their aesthetic and recreational value. This last goal is to be achieved "commensurate with sound policies of resource management" and therefore may be pursued so long as the implementing policy does not interfere with resource management.

### III. *Conclusions of Law*

1. The Court has jurisdiction in this action under 28 U.S.C. § 1331(a).

2. Plaintiff has standing to maintain this suit because of the interference with its business which results from the implementation of § 1372(b)(2) of the Act.

3. Absent allegations of invidious discrimination based upon a suspect classification or involving a fundamental right, the courts must uphold a statute challenged under the equal protection or due process clauses if there exists a rational relationship between a legitimate goal of the statute and the means adopted to implement that goal or goals. This "rational relationship" test which normally governs the review of economic legislation reflects a dominant theme in the Supreme Court decisions since the 1930's to leave policies dealing with regulation of the marketplace almost entirely to the political process. *Exxon v. Governor of Maryland,* 437 U.S. 117, 98 S.Ct. 2207, 27 L.Ed.2d 91 (1978); *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 810–14, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976); *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). The Court has a wide latitude in which to find such a relationship or to postulate a rationale for the challenged legislation, even in the absence of supportive legislative history or Congressional findings, e. g., *Kotch v. Board of River Port Pilot Commissioners,* 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947); *Williamson v. Lee Optical Co., supra; Railway Express Agency v. New York,* 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949). *See generally* Tribe, *American Con-*

*stitutional Law* 450–55, 994–99 (1977). *A fortiori* congressional purpose or declaration of policy set out in the preamble of a statute provides a sound and thoroughly acceptable basis for ascertaining the goals of the statute, *e. g., United States Dept. of Agriculture v. Moreno,* 413 U.S. 528, 533–34, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973).*

4. There is no foundation for plaintiff's contention that the goal of the Act is narrowly limited to furthering wildlife conservation according to scientific principles and that a provision of the Act which cannot be justified under such alleged principles therefore is not rationally related to the purpose of the Act. Even assuming *arguendo* that furtherance of scientific conservation were the sole objective of the Act, in light of Congress's recognition in § 1361(3) of the lack of knowledge about these mammals, their population dynamics, and the relevant ecosystems, the Court would necessarily conclude that a prohibition of the killing of young mammals is not an irrational means of conserving marine mammals.

5. Among the goals of the Act is the protection of mammals simply because they are interesting as objects of observation, photograph and art, because study and observation of them has recreational value, and because their injury or killing would offend aesthetic or moral values; § 1361(6). Congress could rationally conclude that the killing of young and nursing animals is aesthetically offensive and that preserving them would serve to protect them and thus fulfill one or more of these goals of the Act. It could also rationally conclude that forbidding the importation of nursing and young mammals would, by eliminating the demand from the U.S. market, help to prevent their killing. Thus within the limits of the analysis which must be applied to a challenge of this type, the Court finds that the prohibitions of § 1372(b)(2) are rationally related to at least one of the goals of the Act, preservation of marine mammals because of their aesthetic value.

6. Plaintiff makes no issue about possible tension between the aesthetic goal and the goal of "sound resource management." In any event the Court concludes that the prohibition here challenged does not demonstrably impair achievement of sound resource management.

█ 7. The fact that defendants may permit the killing of underage and nursing mammals in certain locations within the United States does not render unconstitutional the prohibitions which are enforced. Congress may choose to take one step at a time or attack only one aspect of a problem. In so doing it does not undertake a constitutional duty to adopt a comprehensive solution, however that would be defined. *Semler v. Dental Examiners,* 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086 (1935); *Williamson v. Lee Optical Co., supra.*

█ 8. Section 1372(b)(2) does not violate the constitutional guarantees of equal protection and due process.

Accordingly, an order will be entered granting defendants' motion for summary judgment and denying plaintiff's motion.

---

* Although the Court concluded that the classification challenged in *Moreno* did not further the purposes set forth in the congressional "declaration of policy" in the Food Stamp Act, 7 U.S.C. § 2011, it noted that the declaration did state the purposes of the Act. *Id.* at 533–34, 93 S.Ct. 2821.