**Kenny RICHARDSON, Petitioner,**

**v.**

**SECRETARY OF LABOR; Mine Safety and Health Review Commission, Respondent.**

No. 81–3060.

United States Court of Appeals, Sixth Circuit.

Argued April 23, 1982.

Decided Oct. 1, 1982.

Rehearing and Rehearing En Banc Denied Dec. 9, 1982.

Rees Kinney, Jarvis, Payton & Kinney, Greenville, Ky., for petitioner.

Mine Safety & Health Review Comm., Washington, D. C., Thomas A. Mascolino, Dept. of Labor, Arlington, Va., Michael A. McCord, Debra L. Feuer, Linda Leasure, for respondent.

Before EDWARDS, Chief Circuit Judge, CONTIE, Circuit Judge, and ENSLEN *, District Judge.

CONTIE, Circuit Judge.

This is an appeal from the findings of the Federal Mine Safety and Health Review Commission. Petitioner Richardson is a master mechanic employed by Peabody Coal

---

* Honorable Richard A. Enslen, U.S. District Judge, Western District of Michigan, sitting by

designation.

Company at their Sinclair Mine; his primary duty is to supervise repair of the mine's strip-mining equipment.

In August of 1977, the boom of the mine's dragline fell while it was being repaired; one worker was killed. An investigation of the accident led the Secretary of Labor to file a petition for assessment of civil penalty against Richardson pursuant to 30 U.S.C. § 819(c).[1] A hearing was held before an administrative law judge. The ALJ found that Richardson had knowingly violated a mandatory safety standard, and assessed him a fine of $500.00. Richardson filed a petition for discretionary review before the Federal Mine Safety and Health Review Commission. The Commission affirmed the decision of the ALJ.

Title 30 U.S.C. § 819 provides for civil penalties, in subsections (a) and (b), against a mine operator who violates a mandatory health or safety standard under the Act and, in subsection (c), against any director, officer, or agent of a corporate operator, who knowingly authorizes, orders or carries out such violation.

Petitioner challenges the constitutionality of § 819(c), arguing that the distinction between agents of corporate operators and agents of non-corporate operators violates the equal protection guarantee contained in the due process clause of the fifth amendment.[2] He contends that insofar as his liability hinges solely upon the business organization of his employer, the statute is arbitrary and capricious. The Court does not agree.

A federal statute dealing with economic regulation comes to the court with a presumption of constitutionality. *Duke Power Company v. Carolina Environmental Study Group,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). In areas of economic regulation, the courts have consistently deferred to legislative determinations as to the desirability of particular statutory dis-

criminations. *City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, its constitutionality is presumed and the challenged classification need only be rationally related to a legitimate governmental interest. *Id.*

The purpose of the Federal Coal Mines Health & Safety Act, 30 U.S.C. § 801 *et seq.,* is to increase the health and safety of the mining industry's "most precious resource—the miner," by requiring *inter alia* that every operator and miner comply with federally promulgated health and safety standards. 30 U.S.C. § 801. To this end, the Act imposes personal liability on mine operators for violations of the federal standards.

The legislative intent behind subsection 819(c) was to assure that the decision-makers responsible for illegal acts of corporate operators would also be held personally liable for violations. S.Rep. No. 411, 91st Cong., 1st Sess. 39 (1969). In a practical sense, any non-corporate mining operation is going to be relatively small, and the probability is that the decision-maker is going to fit the statutory definition of "operator." In a larger, corporate structure, the decision-maker may have authority over only a part of the mining operation. Subsection 819(c) assures that this makes him no less liable for his actions.

In a noncorporate structure, the sole proprietor or partners are personally liable as "operators" for violations; they cannot pass off these penalties as a cost of doing business as a corporation can. Therefore, the noncorporate operator has a greater incentive to make certain that his employees do not violate mandatory health or safety standards than does the corporate operator. Subsection 819(c) attempts to correct this imbalance by giving the corporate employee

---

1. The Coal Act has been amended since the time of the alleged violation, but the pertinent language remains unchanged. Former Section 819(c) is now Section 820(c). The Company

was also assessed a penalty, which it did not contest.

2. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

a direct incentive to comply with the Act. *See Cowin & Co. v. Federal Mine Safety & Health Review Commission,* 612 F.2d 838 (4th Cir. 1979).

The congressional intent behind § 819(c), to hold an additional group of decision-makers personally liable, is rationally related to the purpose of the Act—the enhanced safety of the mine worker.

The failure to include agents of non-corporate operators does not make the classification arbitrary and capricious. The underinclusiveness of a legislative classification will not alone render it unconstitutional. The legislature may act to remedy part of a problem only. *Railway Express Agency v. New York,* 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949). The legislature may even "select one phase of one field and apply a remedy there, neglecting the others." *Cleland v. National College of Business,* 435 U.S. 213, 220, 98 S.Ct. 1024, 1028, 55 L.Ed.2d 225 (1978), quoting *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). As noted above, Congress may have thought that the imposition of personal liability on corporate agents would do much to further mine safety while the imposition of liability on noncorporate agents would do less, and consequently have decided to attack one problem and ignore the other. Because the classification is rationally related to the ends of the Federal Mine Safety & Health Act, 30 U.S.C. § 819(c) does not violate the federal guarantee of equal protection.

The findings of the Federal Mine Safety and Health Review Commission are affirmed.

ENSLEN, District Judge, dissenting:

As the following passage makes clear, Congress intended to protect the health and safety of a precious national resource, the miner, when it enacted the Federal Mine Safety and Health Act of 1977.[1] It is equally obvious that Congress intended the protections to apply to all miners whether they were employed by corporations, partnerships, or sole proprietorships. 30 USC § 801 states:

**Congressional findings and declaration of purpose**

Congress declares that—

(a) the *first priority* and concern of *all* in the coal or other mining industry must be the health and safety of its most precious resource—the miner;

(b) deaths and serious injuries from unsafe and unhealthful conditions and practices in the coal or other mines cause grief and suffering to the miners and to their families;

(c) there *is an urgent need to provide more effective means and measures for* improving the *working conditions and* practices in the Nation's coal or other mines *in order to prevent death* and *serious physical harm;*

(d) the *existence of unsafe and unhealthful conditions* and practices in the Nation's coal or other mines *is a serious impediment* to the *future growth* of the coal or other mining industry *and cannot be tolerated;*

(e) the operators of such mines with the assistance of the miners have the primary responsibility to prevent the existence of such conditions and practices in such mines;

(f) the disruption of production and the loss of income to operators and miners as a result of coal or other mine accidents or occupationally caused diseases unduly impedes and burdens commerce; and

(g) It is the purpose of this chapter (1) to establish interim mandatory health and safety standards and to direct the Secretary of Health and Human Services and the Secretary of Labor to develop and promulgate improved mandatory health or safety standards to protect the health and safety of the Nation's coal or other

---

1. The Federal Coal Mine Health and Safety Act of 1969, 30 USC § 801, *et seq.* (1976) (The Coal Act) was amended and renamed the Federal Mine Safety and Health Act of 1977 (The Mine Act) 30 USC § 801 *et seq.* Section 110(c) of the Mine Act, 30 USC § 820(c) is identical with Section 109(c) of the Coal Act which was in effect when the violation at issue took place.

miners; (2) to require that *each operator* of a coal or other mine and every miner in such mine *comply* with such standards; (3) to cooperate with, and provide assistance to, the States in the development and enforcement of effective State coal or other mine health and safety programs; and (4) to improve and expand, in cooperation with the States and the coal or other mining industry, research and development and training programs aimed at preventing coal or other mine accidents and occupationally caused diseases in the industry.

As amended Pub.L. 95–164, Title I, § 102(a), Nov. 9, 1977, 91 Stat. 1290. (Emphasis supplied)

I am well aware that when neither a suspect class nor a fundamental right is involved, courts will conduct a generally relaxed inquiry into allegations that a particular statute violates the equal protection provisions of the Constitution, and will defer to the Congress if the classification rationally furthers the purpose identified by the legislature. However, I find that Section 820(c) of the Act does not withstand even minimal scrutiny as the classification involved is both arbitrary and contrary to Congressional intent. *See Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

For the same reasons expressed by Chairman Backley of the Federal Mine Safety and Health Commission, I conclude that establishing personal liability for one classification of wrongdoers, (the corporate agent), while exculpating another (the noncorporate agent), does not rationally further Congress' stated purpose to protect *all* miners and to assure that all mine operators and miners comply with health and safety standards. Safety in the mine does not depend upon the legal status of the agent who violates the Act, but is logically a function of the actions and decision-making of the violator. Consequently, a statute which artificially distinguishes between categories of wrongdoers, imposing liability solely because of the organizational structure of their employers, rather than focus-

ing upon the violations involved, does not rationally further either a health or safety objective or the expressed legislative purpose as defined by the statute. Therefore, I respectfully dissent and would reverse the decision of the Commission.