## Curtis v. Kline

*Kenneth C. Myers,* for plaintiff.
*William H. Mitman,* for defendant.

MacELREE, II, *J.,* January 11, 1994—This case comes before the court as a direct constitutional challenge to 23 Pa.C.S. §4327 on the basis of equal protection.

### PROCEDURAL BACKGROUND

On March 2, 1993, defendant Philip H. Kline ["Father"] filed a petition to modify and terminate his support obligation as to the parties' daughter Amber and son Jason, both of whom were over 18 and had graduated high school. On June 2, 1993, the Pennsylvania legislature enacted 23 Pa.C.S. §4327, obligating divorced or separated parents to pay for their children's college expenses under certain circumstances. At the hearing on Husband's petition on October 12, 1993, Husband requested and was granted a continuance to petition

this court for leave to amend his petition to modify to include a constitutional challenge to section 4327. We granted leave to amend and the amended petition presently before us was filed on November 15, 1993. Pursuant to Pa. R.C.P. 235, the Attorney General has been notified that the constitutionality of an act of assembly has been raised.

## ISSUE

Section 4327 obligates parents who are divorced, separated, unmarried, or subject to an existing support obligation to pay certain college expenses for their children who bring or consent to an action for support. Husband asserts that section 4327 violates Section 1 of the Fourteenth Amendment to the Constitution of the United States in that it denies him equal protection under the law. (Defendant's amendment to petition to modify, ¶6(a)(i).)[1] In a constitutional challenge to a classification as violative of equal protection, the Pennsylvania Supreme Court "has ruled that there are three different types of classifications calling for three different standards of judicial review." *Mowery v. Prudential Property & Casualty Insurance Co.*, 369 Pa.

---

1. We note that this would also be a violation of the Equal Protection Clause of the Constitution of the Commonwealth of Pennsylvania. Pa.C.S. Const. Art. 1 §1. At oral argument on this petition, counsel for Husband withdrew paragraph 6(a)(ii) of his amended petition, which challenged section 4327 as an unconstitutional ex post facto law. The explanatory comment to amended Pa.R.C.P. 1910.16-5(k) establishes the effective date of the statute to be September 2, 1993, a non-retroactive application. Had the Act been retroactive in application it would have been unconstitutional as it affects contractual rights. Pa.C.S. Const. Art. 1, §17.

Super. 494, 498, 535 A.2d 658, 660 (1988), citing *James v. SEPTA,* 505 Pa. 137, 477 A.2d 1302 (1984).[2]

"The first type—classifications implicating neither suspect classes nor fundamental rights—will be sustained if it meets a 'rational basis' test. *Singer v. Sheppard,* (464 Pa. 387, 346 A.2d 897 (1975)). In the second type of cases, where a suspect classification has been made or a fundamental right has been burdened, another standard of review is applied: that of strict scrutiny. *San Antonio School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed. 2d 16 (1973). Finally, in the third type of cases, if 'important', though not fundamental rights are affected by the classification, or if 'sensitive,' ... classifications have been made, the United States Supreme Court has employed what may be called an intermediate standard of review, or a heightened standard of review." *Id.*

Since neither the identified college students nor their parents are in a suspect classification group, no fundamental right has been burdened, and "important" rights or "sensitive" classifications have not been argued to be at issue here, the test we employ is the rational basis test.[3] The rational basis test has been set forth in a number of cases as follows.

2. We use federal standards when interpreting the Equal Protection Clause of the Pennsylvania Constitution. *Dansby v. Thomas Jefferson University Hosp.,* 424 Pa. Super. 549, 623 A.2d 816 (1993).

3. We say "argued" because section 4327 may invade a parent's due process right/liberty interest in family privacy, which includes the right to determine support for a child's education. Atkinson, *Support for a Child's Post-Majority Education,* 2 Loyola University Law Journal 695 (1991). From this perspective, the combination of the parents' economic and privacy interests becomes a sensitive/important right which may warrant employing an intermediate or heightened standard of review. However, since we view this argument as sec-

"This deferential standard mandates only that the statutory classification be 'reasonable' and 'rest upon a difference having a fair and substantial relation to the object of the legislation.' " *Mowery, supra* at 501-02, 535 A.2d at 662, citing *Estate of Cox,* 327 Pa. Super. 479, 481, 476 A.2d 367, 371 (1984). "Where a legitimate purpose has been established and a rational relationship between that purpose and the means chosen to foster it has been established, our inquiry whether the statute violates the equal protection clause is at an end." *Id.*

"In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines, see *e.g., Day-Brite Lighting, Inc. v. Missouri,* 342 U.S. 421, 423 (72 S.Ct. 405, 407, 96 L.Ed. 469) (1952); in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment. See *e.g., Ferguson v. Skrupa,* 372 U.S. 726, 732, (83 S.Ct. 1028, 1032, 10 L.Ed. 2d 93) (1963)." *Martin v. Unemployment Comp. Bd. of Review,* 502 Pa. 282, 293, 466 A.2d 107, 112 (1983).

Does the state have any rational basis for: 1) treating college students of divorced or separated parents differently from college students of parents who are not divorced or separated; 2) treating divorced or separated parents of a college student differently from parents who are not divorced or separated; or 3) not replicating the decision of the family had it remained intact? We

---

ondary, and since counsel for both parties agreed at oral argument to proceed under the rational basis test, we decline to employ heightened scrutiny in this case. Were we to employ such a test, the result would be the same, but easier to conclude.

conclude that there is no rational basis for such distinctions. Therefore, we are compelled to declare 23 Pa.C.S. §4327 unconstitutional.

## DISCUSSION

The laws of Pennsylvania require *all* parents to support *all* their children who are unemancipated and 18 years of age or younger. Such a duty arises from both the Support[4] and Juvenile[5] Acts, and was clearly announced by our Supreme Court in *Sutliff v. Sutliff,* 515 Pa. 393, 407, 528 A.2d 1318, 1325 (1987) *"[A] parent has an absolute duty to support his or her minor children . . . ."* The College Expenses Act does not require all parents of all college students to pay college expenses. Nor does the Act provide that, in determining the amount of college support, the court should replicate as closely as possible the decision the family would have made had it remained intact. The Act also exempts parents who would suffer a financial hardship from the obligation of paying college expenses. Only separated, divorced, or unmarried parents, or those parents under an existing support order are obligated under the Act. The primary focus of the Act is to weigh the financial condition of the parties.[6]

What does rational mean? "Rational" has been defined as: 1. Having or exercising the ability to reason. 2. Of sound mind; sane. 3. Consistent with or based on reason; logical. The American Heritage Dictionary of the English Language 1505 (3d ed. 1992). "Reason" has been defined as: 3. An underlying fact or cause that provides logical sense for a premise or an oc-

---

4. 23 Pa.C.S. §4321(2).

5. 42 Pa.C.S. §6301 et seq.

6. 23 Pa.C.S. §4327 (A), (C), (D), (E), (F)(1).

currence. 4. The capacity for logical, rational, analytical thought; intelligence. 5. Good judgment; sound sense. 6. A normal mental state; sanity. *Id.* at 1506. "Logical" has been defined as: 2. Based on earlier or otherwise known statements, events, or conditions; reasonable. 3. Reasoning or capable of reasoning in a clear and consistent manner. *Id.* at 1057.

These definitions contemplate a basis in fact from which a clear conclusion follows in order for something to be rational, reasonable or logical. The opposite of reason is illogical, unreasonable or intuitive. Something which is unreasonable or illogical can also be said to be absurd, fallacious or inconsistent.

With this as background we looked into the legislative history to examine how the legislature determined that this new college support law was or was not rationally related to a legitimate governmental interest. The legislative history demonstrates how the debate on section 4327 was centered around three main issues: 1) The Act should be passed quickly because the 1993 fall tuition bills would soon be due; 2) Parents who owned property but insufficient liquid assets could be forced to sell or mortgage their farms or businesses; and 3) It was unfair to treat parents differently based solely on their marital status.

The families to be affected by the Act, the non-intact families, were described by some representatives as dysfunctional families. Is it logical or rational to conclude that non-intact families are dysfunctional and intact families are functional? Based on my observations and practical life experiences as a businessman, private practitioner, district attorney and judge, I am confident in saying that there are many dysfunctional parents who are not divorced, separated or subject to a support order. I have also observed many divorced or separated

parents who are fully functional and react to their children and former spouse with reason and logic. Unfortunately, in the family court system we usually only see the people with unresolved problems. I take judicial notice of last year's Chester County Family Court statistics which show that approximately 1200 divorce cases were filed. Of those, only 200 asked for a Special Master to be appointed and 400 filed for a custody determination by the court. These statistics tend to indicate that the vast majority of people who have filed for divorce are capable of resolving their marital problems without calling upon the court to referee and compel a result. We take judicial notice of literally hundreds of property settlement agreements of record in this jurisdiction entered into by separated parents who have agreed on a method of paying for their children's college expenses. Separated parents *do have* the ability to agree on these matters.

Under this Act, divorced parents who have been jointly and responsibly raising a child are prevented from jointly deciding that their child should pay for his or her own college expenses. Whether the parents' purpose in making such a decision is to build the child's character, or any other legitimate purpose, under the Act, the judgment of the court as molded by the Act's specific requirements and considerations is substituted for the judgment of the child's parents. However, contrary to the Superior Court cases which created the college support obligation, the statute does not contain, let alone have at its core, the fundamental requirement that the college support awarded should "replicate as nearly as possible the decision the intact family would have made." *Spitzer v. Tucker,* 404 Pa. Super. 539, 542, 591 A.2d 723, 724 (1991). This could run the gamut of paying for everything down to the last paper clip

to paying for nothing. The result is that the non-intact family will be treated differently than the same family if it were intact. A clear example of a capricious, invidious, illogical and inconsistent result of the Act is that the parents of a college student age 18 in an "intact" family could, for any reason, deny that child payment for his/her college expenses. If a year later those same parents separate, the child could then sue his/her parents for college expenses and be entitled to collect under the new law. Moreover, college students from "intact" families are deprived of the benefits of the Act as parents of "intact" families are free to avoid paying for their children's college expenses for any reason whatsoever, be it rational or irrational.

Respondent to this action argues that the rational basis for the Act is that college students who are children from a divorced or separated farmily are more disadvantaged than children from "intact" families. There is simply no evidence either on this record or in everyday life experience to support such a claim. In fact, practical life experience indicates that children of divorced, separated or "intact" families can be either advantaged or disadvantaged depending on the individual circumstances of their particular family situation.

"It is by practical experience and not by theoretical inconsistencies that the question of equal protection is to be decided." *Railway Express Agency, Inc. v. New York,* 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949). We recognize that "[i]n determining whether a classification is rational a court is free to hypothesize the reasons the legislature might have had for its classification." *Martin, supra* at 292, 466 A.2d at 112, citing *Williamson v. Lee Optical,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). We further recognize that the legislature need neither justify the classification nor

consider the particular rationale that satisfies the court. *Martin, supra* at 292, 466 A.2d at 112, citing *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 812, 96 S.Ct. 2488, 2499, 49 L.Ed. 2d 220 (1976). Moreover, we recognize that "[i]n ascertaining legislative intent, we must presume that the legislature did not intend to violate either the Constitution of the United States or that of this Commonwealth." 1 Pa.C.S. §1922(3). All this considered, we can neither discern nor hypothesize any rational basis for the distinction the legislature makes in this instance.

This conclusion is difficult to put into precise words because determining that there is no rational basis for this legislation is a bit like trying to prove a negative. We recognize that there is certainly a rational basis for parents to pay for their children's college expenses, but that is not the issue here. Rather, the issue here is, while applying the factors set forth in the Act, whether there is a rational basis for treating students and/or parents differently based on the parents' status as separated, divorced, unmarried, or otherwise subject to an existing support obligation. We fail to see a rational relationship between the legislative purpose and the means chosen to foster it.

We believe this statute as written is likely to result in the type of invidious discrimination or arbitrary result which is inconsistent with and violative of the Fourteenth Amendment. Accordingly, we enter the following:

## ORDER

And now, January 11, 1994, it is hereby ordered and decreed that Father's petition to modify and terminate his support obligation as to his two eldest children, both of whom have reached age 18 and graduated from high school, is hereby granted.