Bjorgen, C.J.
¶19 (dissenting) — I part with the majority opinion in its analysis of the substantive due process challenge to mandatory legal financial obligations (LFOs). Therefore, I dissent.
¶20 The majority rightly centers its substantive due process analysis on the highly deferential rational basis test.[10] The basic demand of the test is a rational relationship between the challenged law and a legitimate state interest. Amunrud v. Bd. of Appeals, 158 Wn.2d 208, 222, 143 P.3d 571 (2006). In making this determination, we may assume the existence of any necessary state of facts that can reasonably be conceived. Id.
¶21 The central purpose of mandatory LFOs is to raise money to help fund certain elements of the criminal justice system, without doubt a legitimate state interest. Imposing these obligations on those with ability to pay plainly serves that interest. On the other hand, requiring monetary payments from those who cannot and will not be able to pay them does nothing to serve that purpose. Without a Blazina-like[11] individualized determination of ability to pay, these mandatory assessments generate obligations having no reasonable relationship to their purpose.
¶22 The majority analysis would salvage a reasonable relationship through a type of dragnet rationale: because *589 these assessments would be imposed on some who can pay, their imposition on those who cannot serves the purpose of raising money. In a temporal variant of the same approach, the majority analysis also argues that imposing these obligations on those who cannot pay serves the same purpose because they may be able to pay at some point in the future.
¶23 The rational basis test does allow us to posit any reasonably conceivable state of facts in finding the needed rational relationship. Thus, we posit that some, perhaps even many, who are assessed mandatory LFOs can and will pay, which plainly serves the purpose of raising money. Similarly, we may guess that some who lack the ability to pay now may find that ability on some hoped for day in the future.
¶24 However, a license to engage in a gedankenexperiment to discover ways in which a measure could serve a purpose is not a license to impose that measure in ways that do nothing to serve the purpose and that, in fact, work against that purpose. Without the individualized determination required by Blazina for discretionary LFOs, mandatory LFOs will be imposed in many instances on those who have no hope of ever paying them. In those instances, the levy of mandatory LFOs has no relation to its purpose. In those instances, the only consequence of mandatory LFOs is to harness those assessed them to a growing debt that they realistically have no ability to pay, keeping them in the orbit of the criminal justice system and within the gravity of temptations to reoffend that our system is designed to still. Levying mandatory LFOs against those who cannot pay them thus increases the system costs they were designed to relieve. In those instances, the assessment of mandatory LFOs not only fails wholly to serve its purpose, but actively contradicts that purpose. The self-contradiction in such a system crosses into an arbitrariness that not even the rational basis test can tolerate.
¶25 The rational basis test, of course, does not demand the same tailored relationship between means and purpose *590 typically required in strict scrutiny. As noted, a rational relationship between the challenged law and a legitimate state interest is all the rational basis test requires. Amunrud, 158 Wn.2d at 222. Further, under the rational basis test a law may address only part of the societal problem it is directed against. See Ry. Express Agency v. New York, 336 U.S. 106, 110, 69 S. Ct. 463, 93 L. Ed. 533 (1949).
¶26 The majority’s dragnet rationales, though, are something entirely different. These rationales attempt to save a law that contradicts its purpose in some instances by pointing out that the law will serve its purpose in others or by hypothesizing that the contradiction may someday cease. This contradiction between purpose and effect in some instances is not effaced by its absence in others. Nor is the contradiction relieved by the doubtful hope that it may some day pass away. These uses of the imagination are far removed from positing different ways in which a law may serve its purpose, which is the sort of speculation invited by the rational basis standard.
¶27 Although rational basis review is highly deferential, courts have invalidated legislation under it where the purported rationale for challenged legislation is too attenuated or irrational in light of the legislation’s effect. In Turner v. Fouche, the United States Supreme Court considered an equal protection challenge to a Georgia statute limiting school board membership to freeholders, those owning some real property. 396 U.S. 346, 361-62, 90 S. Ct. 532, 24 L. Ed. 2d 567 (1970). In the face of the parties’ dispute over the proper standard of review, the court noted that the “freeholder requirement must fall even when measured by the traditional test for a denial of equal protection: whether the challenged classification rests on grounds wholly irrelevant to the achievement of a valid state objective.” Id. at 362. The court reasoned:
Nor does the lack of ownership of realty establish a lack of attachment to the community and its educational values. *591 However reasonable the assumption that those who own realty do possess such an attachment, Georgia may not rationally presume that that quality is necessarily wanting in all citizens of the county whose estates are less than freehold. Whatever objectives Georgia seeks to obtain by its “freeholder” requirement must be secured, in this instance at least, by means more finely tailored to achieve the desired goal.
Id. at 364 (footnotes omitted).
¶28 Although Turner dealt with an equal protection challenge, the essence of the rational basis standard is unchanged. The speculation that offended that standard in Turner is different from that entertained by the majority here in its specifics but not in its nature. The majority’s approach lacks that rudimentary fit that Turner required under rational basis review. Perhaps more to the point, if the hypothesizing of the majority approach is sufficient to relieve the contradictions in assessing mandatory LFOs with no consideration of ability to pay, then the rational basis test must tolerate the irrationality of clearly antagonistic purpose and effect. That irrationality itself contradicts the core of the rational basis test.
¶29 For these reasons, I would conclude that the assessment of mandatory LFOs with no inquiry into ability to pay fails the rational basis test.
Review denied at 188 Wn.2d 1015 (2017).

 The notion of substantive due process appears in different guises in the case law. In this appeal, it centers on whether the rational basis test is met.

 State v. Blazina, 182 Wn.2d 827, 344 P.3d 680 (2015).