August 6, 1976.

M. P. No. 76-289. TIMOTHY GORMALLY *v.* STATE BOARD OF ELECTIONS. The petitioner aspires to be a candidate for election to the First Ward Committee of the City of Cranston's Democratic Party at the September 14, 1976 primary. He asks that we issue our common law writ of certiorari and review a decision of the State Board of Elections that upheld a ruling by the City Board of Canvassers. The canvassers ruled that the petitioner had not qualified as a candidate because his nomination papers failed to contain 50 valid signatures of "party voters" as required by G. L. 1956 (1969 Reenactment) §17-14-7 (h). The canvassers had certified 42 signatures as being valid but rejected 11 others because they did not conform with the mandate of §17-14-8 which specifies that a voter who signs a candidate's nomination papers must sign his name "as it appears on the voting list."

Contentions similar to those now being made by the petitioner were rejected by a majority of this court in *Malinou* v. *Board of Elections*, 108 R.I. 20, 271 A.2d 798 (1970). There, as here, the candidate asked that this court apply the doctrine of substantial performance. However, the majority pointed out in *Malinou* that the exact conformance requirements of §17-14-8 serve a real governmental purpose in that it enables the local boards of canvassers in all of the municipalities of this state to check nomination papers so that they can report to the Secretary of State and in turn this official can take the necessary steps so that the ballot will be printed and distributed in time

for the primary. The remedy for the petitioner's present difficulty is to be found in the legislative rather than the judicial branch of government, and accordingly the petition for certiorari is denied.

Mr. Justice Joslin, dissenting. In my dissent in *Malinou* v. *Board of Elections*, 108 R.I. 20, 40, 271 A.2d 798, 808 (1970) I refused to read the relevant statute "\* \* \* as making disqualification the price for failure to comply literally", and I said that "such a reading completely ignores an election system which is based on signature identification, and which could, as in this case, result in the unnecessary invalidation of the authentic signatures of qualified party electors." The passage of time has in nowise altered my views, and in addition to issue the writ would afford the Chief Justice and my Brother Doris, who were not members of the court when *Malinou* was decided, an opportunity to decide for themselves whether the legislature contemplated that canvassers engaged in the validation process "\* \* \* should intentionally blind themselves to signature likenesses or differences and look at the two signatures — (one on the voter's registration card and the other on the nomination paper) — for the limited purpose of ascertaining whether one is a letter-for-letter, initial-for-initial, abbreviation-for-abbreviation duplicate of the other." Accordingly, I would issue the writ. *Id*. at 39, 271 A.2d at 807. *Timothy Gormally*, pro se. *Stephen F. Achille*, for respondent.