**Denise R. FELICE**

v.

**RHODE ISLAND BOARD OF ELECTIONS.**

Civ. A. No. 88–0100–T.

United States District Court, D. Rhode Island.

Dec. 16, 1991.

Walter Stone, Providence, R.I., for plaintiff.

Anthony Bucci, N. Providence, R.I., for defendant.

## DECISION

TORRES, District Judge.

This is an action for declaratory relief, injunctive relief and damages brought pursuant to 42 U.S.C. § 1983. The issue presented is whether the Rhode Island Board of Elections (the "Board") violated the plaintiff's rights to due process and/or equal protection under the First and Fourteenth Amendments to the United States Constitution by refusing to certify her candidacy for election as a delegate to the Democratic national convention on the ground that she did not comply with a state law requiring that the name and address stated on her declaration correspond exactly to her name and address as set forth on the voting list. This Court holds that it did not.

## FACTS

Rhode Island law requires an individual seeking to become a delegate to a political party's national convention to complete a declaration of candidacy setting forth "[h]is or her name and address *as they appear on the voting list*" and to "sign his or her name [on the declaration of candidacy] *as it appears on the voting list.*" R.I.Gen. Laws § 17–12.1–3 (1988 Reenactment) (emphasis added).

In 1988, the plaintiff filed a declaration of candidacy to be one of Rhode Island's delegates to the Democratic National Convention. In her declaration, she listed her name as "Denise *R.* Felice" (emphasis added). The Rhode Island Secretary of State ruled the declaration invalid because the plaintiff's name appeared on the voting list as "Denise Felice." Felice appealed that ruling to the Board which upheld the ruling on the ground that § 17–12.1–3 requires that a candidate's name on a declaration of candidacy be identical to the candidate's name as set forth on the voting list.

On February 12, 1988, Felice brought this suit alleging that the Board had acted arbitrarily and capriciously and that its refusal to certify her candidacy constituted a "denial of equal protection." On Saturday, February 13, 1988, this Court conducted a hearing in connection with Felice's application for a preliminary injunction requiring the defendants to include her name on the ballot.

The evidence presented at that hearing established that the Board had consistent-

ly, and without exception, refused to certify candidates in similar cases based upon its interpretation of § 17–12.1–3 and the Rhode Island Supreme Court's construction of identical language contained in another statute governing nomination papers.[1] The Board also presented evidence regarding the problems and burdens it would face if it was required to depart from its "bright line" rule. Specifically, it cited the impracticality of conducting evidentiary hearings during the short time period between the deadline for filing declarations of candidacy and the deadline for printing the ballot in order to assess the likelihood that voters would be confused by such discrepancies. It also pointed to the difficulty of establishing a consistent and articulable rule once the dike was breached.

Based on the legislative history of § 17–12.1–3 and on the Rhode Island Supreme Court's holdings in *Malinou v. State Bd. of Elections*, 108 R.I. 20, 271 A.2d 798 (1970), and *Gormally v. State Bd. of Canvassers*, 117 R.I. 905, 362 A.2d 156 (1976), this Court determined that the Board had correctly interpreted the statute. Furthermore, this Court concluded that, as so interpreted, § 17–12.1–3 did not likely violate Felice's due process rights because the State's compelling interest in preventing confusion among voters and expeditiously certifying candidates clearly outweighed the minimal burden imposed on Felice to get on the ballot (i.e. checking with her local Board of Canvassers to ascertain how her name appeared on the voting list). Finally, this Court found no evidence of an equal protection violation inasmuch as the Board had consistently taken the same position in similar cases. However, the Court noted that "once the Board deviates from that position, then we may very well have some equal protection or due process arguments. . . ."

Those words proved to be prophetic because, several months later, the Board certified a candidate for public office even though the candidate's nomination papers included a middle initial that was absent

from her name as recorded on the voting list. The Board's proffered reason for departing from its "bright line" rule in that case was that it was estopped from keeping the candidate off the ballot because she previously had been certified and elected under the name listed on her nomination papers. Felice, understandably, was not impressed by that explanation and filed a supplemental amended complaint citing the incident as support for her equal protection claim.

Since both parties have waived the right to present any further evidence, the transcripts of the preliminary injunction hearing and the subsequent proceeding before the Board provide the factual basis for deciding this case.

## DISCUSSION

### I. *The Due Process Claim*

Felice contends that the defendants acted arbitrarily and capriciously in disqualifying her and that applying the statute in this manner deprives her of her right to seek election without due process of law. However, as this Court previously noted in denying Felice's motion for a preliminary injunction, there was nothing arbitrary or capricious about the Board's interpretation of R.I.Gen.Laws § 17–12.1–3.

By its terms, the statute requires a declaration to set forth the candidate's name and address *"as they appear on the voting list."* R.I.Gen.Laws § 17–12.1–3 (emphasis added). Although the statute might be construed less literally, there is nothing unreasonable about the construction adopted by the Board. In fact, its interpretation is perfectly consistent with the Rhode Island Supreme Court's decision in *Malinou*. In that case, it was held that identical language contained in R.I.Gen. Laws § 17–14–8 (1969 Reenactment) requiring that a person signing a candidate's nomination papers must sign "his or her name . . . as it appears on the voting list" was not satisfied unless the signature and

---

1. *See Malinou v. State.Bd. of Elections*, 108 R.I. 20, 271 A.2d 798 (1970) (applying R.I.Gen.Laws § 17–14–8 (1969 Reenactment)).

name *exactly* corresponded. *Malinou*, 108 R.I. at 35, 271 A.2d 798. The Court expressly rejected the argument that "substantial" equivalency was sufficient. *Id.* at 31–35, 271 A.2d 798. In an appendix to its opinion, the *Malinou* Court listed a representative sampling of the kinds of discrepancies rendering the contested signatures in that case invalid. Among them were the inclusion or omission of a middle initial, precisely the type of discrepancy involved in this case. *Id.* at 36, 271 A.2d 798. *Malinou* was reaffirmed in *Gormally, supra,* where the Court again rejected the argument that substantial compliance was sufficient to satisfy § 17–14–8.

The General Assembly later amended § 17–14–8 to provide that a voter's signature on nomination papers "shall be accepted as valid if it can be reasonably identified to be the signature of the voter...." R.I.Gen.Laws § 17–14–8 (1988 Reenactment). However, it did not make any comparable change in what had been the identical language of § 17–12.1–3 even though other amendments were made to that section in 1975 and 1983. That history supports the Board's conclusion that the General Assembly intended to continue applying the more stringent requirement to declarations of candidacy. *Cf. Narragansett Food Services, Inc. v. R.I. Dept. of Labor,* 420 A.2d 805, 808 (R.I.1980) ("The Legislature is presumed to know the state of existing relevant law when it ... amends a statute.").

In short, this Court finds that the defendant's interpretation of § 17–12.1–3 cannot be deemed arbitrary or capricious. Consequently, the only remaining question is whether the statute, as so interpreted, deprives Felice of her right to run for office without due process.

■ The test to be applied in determining whether a regulation violates substantive due process depends upon the type of regulation involved and the nature of the individual rights at stake. Thus, regulation dealing with economic or social mat-

ters or affecting nonfundamental rights is evaluated under the rational basis test and will be upheld unless it is shown that the regulation bears no rational relationship to a constitutionally permissible state purpose. *United States v. Carolene Products Co.,* 304 U.S. 144, 152, 58 S.Ct. 778, 783, 82 L.Ed. 1234 (1938). On the other hand, regulation that impinges on fundamental rights is subject to strict scrutiny and must be necessary to promote a compelling governmental interest. *See Bates v. Little Rock,* 361 U.S. 516, 524, 80 S.Ct. 412, 417, 4 L.Ed.2d 480 (1960).

■ Being a candidate for public office has not been recognized by the Supreme Court as a "fundamental" right.[2] Therefore, the test to be applied in this case is whether § 17–12.1–3 rationally serves a legitimate purpose that outweighs any burden it places on Felice's interest in seeking public office. *See Williams v. Kleppe,* 539 F.2d 803, 807 (1st Cir.1976).

■ In this case, the Board has identified three purposes served by § 17–12.1–3. The first is to verify that a candidate is a qualified elector and therefore eligible to be listed on the ballot. The second is to prevent confusion on the part of voters by insuring that they can identify candidates and will not mistake them for other persons having similar names. The third is to see to it that certification of candidates, including the process of verifying their eligibility and insuring that voters will not be confused, is accomplished in an efficient, expeditious and objective fashion. There is no question that these purposes reflect a legitimate state interest in regulating elections and protecting the franchise of voters as well as the rights of candidates. *See Marchioro v. Cheaney,* 442 U.S. 191, 195–96, 99 S.Ct. 2243, 2246–47, 60 L.Ed.2d 816 (1979) (quoting *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974)).

In determining how important the statute is to achievement of those objectives,

---

**2.** However, as discussed *infra,* laws imposing "burdensome" requirements on potential candidates are subject to "fairly" strict scrutiny under

the Equal Protection clause when they affect the right to vote or a person's access to the ballot.

one must view it in the context of the electoral process as a whole. Under Rhode Island law, a person desiring to be a delegate must file a declaration of candidacy between January 9th and January 19th. R.I.Gen.Laws § 17–12.1–3. The Secretary of State then has ten days in which to prepare and deliver nomination papers to the candidate. R.I.Gen.Laws § 17–12.1–5 (1988 Reenactment). During the next ten days, a candidate must submit nomination papers with the requisite number of signatures to his or her local Board of Canvassers which has five days in which to check, process and certify the papers to the Secretary of State who determines whether to place the candidate's name on the ballot. R.I.Gen.Laws § 17–12.1–7 (1988 Reenactment). Objections to the Secretary of State's decisions must be filed within twenty-four hours, and the State Board of Elections is required to hold hearings and rule on the objections during the ensuing nine days so that ballots may be printed by the beginning of the absentee ballot application period which starts twenty days before the election. R.I.Gen.Laws § 17–20–8 (1988 Reenactment).

During the nine days before the ballot is printed, the Board must deal with a variety of questions relating to eligibility of candidates, appeals from decisions of the Secretary of State and the format of the ballot itself. The formidable task of addressing such issues during a similarly limited period is precisely what led the *Malinou* Court to conclude that § 17–14–8:

> admits ... no room for the doctrine of substantial compliance. To hold otherwise would result in its emasculation and could wreak havoc on our elective processes....

*Malinou*, 108 R.I. at 35, 271 A.2d 798.

By way of contrast, the burden the statute imposes on prospective candidates like Felice is minimal. It requires only that the candidate check with the local Board of Canvassers to determine how the candidate's name appears on the voting list. That burden is not an onerous one and is clearly outweighed by the State's interest in establishing an objective, efficient and expeditious process for certifying candidates. In short, § 17–12.1–3 is rationally related to the achievement of legitimate state purposes and does not significantly impact any fundamental rights. Therefore, it does not deprive Felice of due process.

## II. *The Equal Protection Claim*

■ The Fourteenth Amendment prohibits states from denying persons "equal protection of the laws." U.S. Const. amend. XIV, § 1. Generally speaking, it proscribes governmental action that treats one group of individuals less favorably than others similarly situated. *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). However, the Fourteenth Amendment does not require perfectly equal treatment for every individual. *See Kahn v. Shevin*, 416 U.S. 351, 355–56, 94 S.Ct. 1734, 1737–38, 40 L.Ed.2d 189 (1974); *Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 110, 69 S.Ct. 463, 465, 93 L.Ed. 533 (1949). Courts have recognized that statutes and other forms of governmental regulation necessarily result in some form of unequal treatment because, by definition, they create classifications of persons who are affected in different ways. The Equal Protection clause is implicated only when the resulting classifications are constitutionally "impermissible." *E.g., Kahn, supra.*

■ The test to be applied in determining whether a particular classification is "impermissible" is similar to that applied under the Due Process clause. It depends upon the kind of regulation involved, the criteria used in creating the classification and the nature of the governmental interest and individual rights at stake. Thus, regulation dealing with economic or social matters or affecting non-fundamental rights is evaluated under the rational basis test (i.e. it will be upheld unless not rationally related to a constitutionally permissible state purpose). *See Railway Express*, 336 U.S. at 110, 69 S.Ct. at 465. On the other hand, regulation that discriminates against racial or ethnic minorities or which impinges upon fundamental rights must survive strict scrutiny (i.e. it must be neces-

sary to promote a compelling state interest). *Korematsu v. United States*, 323 U.S. 214, 216, 65 S.Ct. 193, 194, 89 L.Ed. 194 (1944), *reh. denied*, 324 U.S. 885, 65 S.Ct. 674, 89 L.Ed. 1435 (1945). Classifications based upon gender are subjected to an intermediate level of scrutiny (i.e. they must be substantially related to important governmental objectives). *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976).

■ Even though the interest in being a candidate for public office is not a "fundamental" right, laws imposing "burdensome" requirements that unduly restrict a potential candidate's access to the ballot are subject to "fairly" strict scrutiny. *Clements v. Fashing*, 457 U.S. 957, 963–64, 102 S.Ct. 2836, 2843–44, 73 L.Ed.2d 508 (1982) (law preventing public office holder from running for election to legislature during term as office holder does *not* violate equal protection); *see Lubin v. Panish*, 415 U.S. 709, 716, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974) (requirement that a fee be paid to get on the ballot violates indigent candidates' right to equal protection); *Williams v. Rhodes*, 393 U.S. 23, 31, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968) (highly restrictive requirement that independent candidate or minor party demonstrate a certain level of support to gain access to ballot is unconstitutional).

■ In this case, the requirement that a candidate's declaration set forth his or her name as it appears on the voting list does not create a significant barrier to getting on the ballot. Nor can it be characterized as "burdensome." It can be satisfied by the simple expedient of checking the voting list. Consequently, the constitutionality of § 17–12.1–3 must be determined under the rational basis test.

The statute passes that test with flying colors. As already noted, its requirements reasonably serve a legitimate state interest in establishing an efficient and expeditious process for certifying candidates. Furthermore, it does not create any impermissible classification because it evenhandedly affects all candidates.

Nevertheless, Felice contends that the statute has been *applied* in a way that treats her less favorably than other candidates similarly situated. Consequently, her claim comes down to one of selective enforcement.

■ It should be noted that "[m]ere failure to prosecute other offenders is not a basis for a finding of denial of equal protection." *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir.1980) (citations omitted). To put it another way, "equal protection does not require that all evils of the same genus be eradicated or none at all.". *LeClair*, 627 F.2d at 608 (citing *Railway Express*, 336 U.S. at 110, 69 S.Ct. at 465). If that were the case, every law that is not perfectly administered would be unenforceable. In the words of the Eleventh Circuit:

> if local government decisionmakers correctly applied a facially neutral resolution in hundreds of cases and erroneously applied it in a single case, they could never again apply it correctly without violating equal protection.

*E & T Realty v. Strickland*, 830 F.2d 1107, 1114 (11th Cir.1987). Thus, although perfectly consistent administration of the law ought to be the goal of all public officials, failure to achieve that goal in a particular case does not necessarily constitute an equal protection violation that renders the law unenforceable. "[T]he Constitution does not demand perfection." *Id.* at 1114 (citations omitted).

■ In order to prevail on a selective enforcement claim, one must do more than establish that the challenged regulation was not applied with absolute uniformity. Specifically, the claimant must prove:

1. That she was treated differently from others similarly situated, and

2. That such selective treatment was the product of intentional or purposeful discrimination in that it was based on impermissible considerations such as membership in a protected class, intent to inhibit or punish the exercise of a constitutional right or malicious bad faith intent to injure the claimant. *Yerardi's v. Randolph Selectmen*, 932 F.2d 89, 92 (1st Cir.1991); *Le-*

*Clair,* 627 F.2d at 609–10; *E & T Realty,* 830 F.2d at 1114.

 In this case, Felice has presented evidence suggesting that the Board failed to apply the statute to the other candidate with the same rigor as they applied it to her. As offensive as that possibility is, it does not require this Court to determine whether the Board's stated reason for distinguishing between the two cases was valid. Felice's claim fails because she has not made the requisite showing of intentional or purposeful discrimination. She has neither alleged nor proved that she was singled out for selective treatment based on her race or sex or because of an intent to inhibit her exercise of a constitutional right, or because of a malicious or bad faith intent to injure her. At most she has asserted that the Board's action was irrational or inconsistent.

Although it may be inferred that the Board acted intentionally in the sense that it was aware that its decision would prevent Felice from being a candidate, there is no evidence that it acted maliciously or in bad faith. The fact that it might have treated Felice less favorably than another candidate similarly situated is not sufficient, by itself, to establish malice or bad faith. Scrupulous proof of malice or bad faith is required. *Yerardi's,* 932 F.2d at 94. Thus,

> '[d]iscriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected ... a particular course of action at least in part 'because of' ... its adverse effects upon an identifiable group.

*E & T Realty,* 830 F.2d at 1114 (quoting *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979) (citations omitted)).

Thus, at most, Felice has alleged that, in the case of the other candidate, the Board improperly deviated from its usually stringent "bright line" rule. Although such uneven administration of the law ought to be condemned, it does not constitute a violation of the Equal Protection clause unless it is the product of invidious discrimination, malice or an intent to inhibit the exercise of a constitutional right. Otherwise, a single misapplication of the law would render it unenforceable. Since Felice has failed to establish any of these things, her equal protection claim must fail.

### CONCLUSION

For all of the foregoing reasons, the clerk is directed to enter judgment for the defendant.

IT IS SO ORDERED.